[No. 15398.   Department One.—December 28, 1893.]

## ALMON WHEELOCK, EXECUTOR, ETC., APPELLANT, v. ARABELLA GODFREY ET AL., RESPONDENTS.

ESTATES OF DECEASED PERSONS—ACTION BY EXECUTOR TO SET ASIDE AS-
SIGNMENT OF PASS BOOK—EQUITY—JURY TRIAL.—A complaint by the
executor of a decedent which alleges that the decedent assigned his
bank book to the defendant shortly before he died; that at the time of
the assignment, if the same was ever in fact executed, he had been
stricken with paralysis, was weak in body and mind, and mentally un-
sound and incompetent; that he lodged and boarded at the house of the
defendant, was subject to and under her influence, direction, and con-
trol, and that she fraudulently and by duress, menace, and undue in-
fluence induced and procured the deceased, in his enfeebled condition,
to execute the assignment, and which prays for a judgment that the
assignment be declared null and void, and set aside; that the assign-
ment was not made by the decedent, and that the moneys be declared
the property of the estate of the decedent, and that plaintiff have judg-
ment therefor, states a case of equitable cognizance, which the plaintiff
is not entitled to have tried by a jury.

ID.—EVIDENCE—MENTAL SANITY—OPINION OF "INTIMATE ACQUAINT-
ANCE"—DISCRETION.—The question as to whether or not a witness is
an "intimate acquaintance," within the meaning of section 1870 of the
Code of Civil Procedure, which allows an intimate acquaintance to give
his opinion respecting the mental sanity of a person, is addressed very
largely to the discretion of the trial court, and its ruling will not be
disturbed upon appeal, if the conclusion reached is one which can be
reasonably entertained consistently with the idea of intimacy.

ID.—TESTIMONY OF PHYSICIAN AS TO SANITY OF PATIENT—WAIVER OF
OBJECTION TO COMPETENCY—MOTION TO STRIKE OUT.—Where the phy-
sician who attended the decedent was put upon the stand by the plain-
tiff to describe his ailments, and testified, upon cross-examination, as
to his mental status, and that he was thoroughly rational and compe-
tent, without objection taken to such cross-examination, all objection
on the part of the plaintiff to the competency of his evidence is waived,
and it cannot be struck out on plaintiff's motion without the consent of
the defendants.

ID.—ESTOPPEL OF PARTY CALLING WITNESS.—A party to an action who
introduces testimony which, in the face of an objection, would be in-
competent cannot, upon discovering that it militates against him, strike
it out without the consent of the opposite party.

ID.—SEASONABLE OBJECTION TO TESTIMONY OF PHYSICIAN.—The party
   claiming the benefit of the statute excluding the testimony of a phy-
   sician as incompetent to testify under subdivision 4 of section 1881 of
   the Code of Civil Procedure must seasonably exercise the privilege by
   objecting to the evidence at the time it is offered.

ID.—OPINION OF PHYSICIAN—QUALIFICATION OF EXPERT.—Where a phy-
   sician, called as a witness for the defendants in an action in which the
   mental soundness of a decedent was in issue, testified without objection
   to his competency that he had been in practice for seventeen years, and
   had been the attending physician of the decedent for a period of almost
   a year prior to his death, attending him at times as often as two or three
   times a day, and it appeared that he had also been called as an expert
   witness for the plaintiff, his testimony that in his opinion the decedent
   was of sound mind during all of the time he had acted as his attending
   physician is not subject to the objection that he was not proven to be an
   expert.

APPEAL—SPECIFICATION OF ERROR NOT POINTED OUT IN BRIEF.—Where
   an appellant merely says in his brief that he does not waive certain
   errors assigned in the record, and asks the appellate court to examine
   them, as set forth in the specification of errors, without any direction
   as to where they are to be found in a voluminous record, the appellate
   court will treat them as unimportant.

APPEAL from an order of the Superior Court of the
City and County of San Francisco denying a new trial.

The facts are stated in the opinion.

*Clunie & Clunie,* and *Andrew J. Clunie,* for Appellant
Wheelock.

The court erred in admitting the testimony as to the
mental competency of the deceased, as none of the wit-
nesses were shown to have been intimate acquaintances
of the deceased. (*Estate of Carpenter,* 94 Cal. 414–16;
*People* v. *Levy,* 71 Cal. 618; *Kinlesidie* v. *Harrison,* 2
Phill. Ch. 449; Webster's, Worcester's, and Century
Dictionaries, definition of "intimate" and "acquaint-
ance"; Code Civ. Proc., sec. 1870, subd. 10.)   The court
erred in denying the application of plaintiff for a jury
trial, as the primary right of the plaintiff was strictly
legal, and the remedy sought was a mere recovery of
money.   (Code Civ. Proc., sec. 592; *Chapman* v. *Lee,* 45
Ohio St. 362; *Brundridge* v. *Goodlove,* 30 Ohio St. 374;
*White* v. *Lyons,* 42 Cal. 279; *Hughes* v. *Dunlap,* 91 Cal.
385; *Davis* v. *Morris,* 36 N. Y. 569; Pomeroy's Remedies

and Remedial Rights, secs. 36, 68.) The court erred in denying the motion of plaintiff to strike out the testimony of Dr. John Montgomery, the attending physician of deceased, and in overruling the objection of plaintiff to questions asked of said attending physician by defendant as to mental condition of said deceased. (*Edington* v. *Mutual Life Ins. Co.*, 67 N. Y. 185; *Dilleber* v. *Home Life Ins. Co.*, 69 N. Y. 256; 25 Am. Rep. 182; *Grattan* v. *Metropolitan Life Ins. Co.*, 80 N. Y. 282; 36 Am. Rep. 617; 92 N. Y. 286; 44 Am. Rep. 372; *Renihan* v. *Dennin*, 103 N. Y. 573; 57 Am. Rep. 770; *Feeney* v. *Long Island R. R. Co.*, 116 N. Y. 375; *Pennsylvania Co.* v. *Marion*, 123 Ind. 415; 18 Am. St. Rep. 330; *Westover* v. *Ætna Life Ins. Co.*, 99 N. Y. 56; 52 Am. Rep. 1.)

*Henry C. Campbell*, for Appellant San Francisco Savings Union.

*William Barber*, and *Geo. E. Lawrence*, for Respondent.

The court properly admitted the testimony of the witness as to the mental condition of the decedent. (*In re Carpenter*, 79 Cal. 386; *People* v. *Pico*, 62 Cal. 53; *People* v. *Levy*, 71 Cal. 618.) The complaint shows that the case was one in which equitable relief alone was demanded, and therefore the plaintiff was not entitled to a jury trial. (*Fish* v. *Benson*, 71 Cal. 433; *Cassidy* v. *Sullivan*, 64 Cal. 266.) The motion to strike out Dr. Montgomery's testimony was properly denied, as the motion came too late. (*People* v. *Long*, 43 Cal. 446; *People* v. *Samario*, 84 Cal. 484, 485; *People* v. *Dixon*, 94 Cal. 257.)

SEARLS, C.—This action was brought to recover by Almon Wheelock, as the executor of the last will of Albert G. Wheelock, the sum of seven thousand and forty-five dollars and eighty-nine cents, moneys received on deposit by the defendant San Francisco Savings Union from Albert G. Wheelock in his lifetime. Defendants had judgment. Plaintiff thereupon moved

for a new trial, which motion was denied, and from the order of denial this appeal is taken.

Albert G. Wheelock was a bachelor of the age of say sixty-five years; had been a bank clerk in San Francisco and possessed a fortune worth say fifty thousand dollars.

Arabella D. Godfrey was a widow, and Wheelock had lodged at her house for some fifteen years, was a friend of her deceased husband in his lifetime, and had according to some of the testimony, at intervals from the time of the death of the husband of said Arabella D. Godfrey, evinced a determination to make some provision for the support and maintenance of the latter. On or about September 25, 1888, said Albert G. Wheelock made a last will whereby he bequeathed and devised all his estate, real, personal, and mixed, to his nephews, a niece, and sister residing at Chicago, Illinois, and Toledo, Ohio.

On or about October 1, 1888, Wheelock had on deposit with defendant, the San Francisco Savings Union, an incorporated bank of savings, which we will hereafter denominate the bank, the sum of seven thousand and forty-five dollars and eighty-nine cents, in evidence of which he held a bank book.

At the date last mentioned he duly assigned his said bank book to the defendant, Arabella D. Godfrey, who took it to the bank with the assignment, had the amount thereof transferred to her credit, and received a bank book therefor in her own name.

On the twentieth day of October, 1888, Albert G. Wheelock died at the house of said Arabella D. Godfrey, in the city and county of San Francisco.

The last will aforesaid was admitted to probate, and Almon Wheelock, named therein as an executor, was duly appointed and qualified as such executor.

The gravamen of the complaint is that at the date of the said assignment, if the same was ever in fact executed, Albert G. Wheelock had been stricken with paralysis, was weak in body and mind and mentally

unsound and incompetent to attend to any business whatever.

That he lodged and boarded at the house of defendant Godfrey, was subject to and under her influence, direction, and control, and that the latter fraudulently and by duress and menace and by undue influence, induced and procured said Wheelock, in his enfeebled condition, to execute the assignment to her, etc.

Plaintiff demanded judgment:

1. That the assignment be declared null and void, and set aside.

2. That the assignment was not made by Albert. G. Wheelock.

3. That said moneys be declared the property of the estate of Albert G. Wheelock, and that plaintiff have judgment against the defendants therefor and for general relief.

The complaint was not verified.

The defendants answered separately, each denying the material allegations of the complaint except as expressly admitted.

The bank admitted that it held the money on deposit, set up the transfer of the deposit to defendant Godfrey, etc., and by way of answer and cross-complaint set out that both plaintiff and defendant Godfrey claimed the money, that it was willing to pay it over to the one entitled thereto, etc.; that it has no interest in the dispute, and asks that the parties be required to interplead, and that the court determine which of them is entitled to the fund, etc.

Defendant Godfrey also filed a cross-complaint, which was on motion stricken out.

At the trial the principal question in controversy related to the mental status of Wheelock at the date of the assignment.

A number of witnesses on the part of defendant were called upon to express an opinion as to the mental sanity of said Wheelock.

To the expression of an opinion on this subject coun-

sel for appellant objected, and the action of the court in
overruling the objection is assigned as error.

The first of these alleged errors is in relation to the
testimony of Mary S. Mugan, and is based upon an
alleged failure to establish a predicate for the expres-
sion of an opinion by showing that the witness was such
an "intimate acquaintance" of said Wheelock as is re-
quired by subdivision 10 of section 1870 of the Code of
Civil Procedure.

That section, after providing for other cases in which
witnesses may give an opinion, adds in subdivision 10,
as follows:

"And the opinion of an intimate acquaintance re-
specting the mental sanity of a person, the reason for
the opinion being given."

The witness stated in substance that she was twenty-
three years of age and had known Wheelock since she
was five years old, lived in his vicinity, first across the
street and then next door, and saw him every day until
within the last six years, when we moved away. We
were good friends with Mrs. Godfrey (where Wheelock
lived), and I have been since in the habit of going there,
maybe twice a week, and sometimes oftener, and saw Mr.
Wheelock many times and conversed with him, very
often had little conversations with him—conversed with
him in 1888. Was in his room in 1888, and had a talk
with him as to the changes in the furniture of his room.
When Mrs. Godfrey was out at times he would come to
the door for me. There were many times that we had
conversations, so that I haven't them placed.

The witness was then permitted to express an opinion
that "he was of sound mind," and gave as reasons there-
for that there was no evidence of any illness; that there
was no evidence of any unsoundness; that Mrs. Godfrey
used to go out and leave him in charge of her house,
and would not have done so with a man of unsound
mind, and added:

" The expression of his countenance was always just
as I had seen it from a child; it was perfectly sound and

bright. There was no change in Mr. Wheelock's expression from the time I knew him first until his death."

From necessity much must be left to the discretion of the trial court in determining whether or not a given witness is an "intimate acquaintance" within the purview of the statute. As an abstract proposition the question would seem to be one easily solved.

In practice, however, a serious difficulty is met in the incapacity to detail specifically all the minor incidents from which the ultimate fact of an intimate acquaintance is deduced. Many persons cannot describe particulars in detail.

A witness, as the result of observation, will determine with great accuracy that a given person is intoxicated, but confine him to a detail of the minute appearances that have led him unerringly up to the fact, and he will often fail most signally. The details of conduct, attitude, tones, gestures, words, expression of eye and face, and abnormal movements have either escaped him or he is unable to draw what may be termed a living picture of what he has seen and what is in reality photographed upon his mind. It is much the same in regard to the lesser details which go to make up the status of an intimate acquaintance, and the court having the witness before it is better able to determine the relation of the parties from the evidence given, than can be done from a cold record of the words spoken.

It is for this and similar reasons that this court has said that the question was addressed to the discretion of the court below, and that there being no abuse of the discretion, the appellate court would not interfere. (*In re Carpenter*, 79 Cal. 382; *Estate of Carpenter*, 94 Cal. 407; *People* v. *Levy*, 71 Cal. 623; *People* v. *Fine*, 77 Cal. 147; *People* v. *Pico*, 62 Cal. 53.)

The difficulty in this class of cases which has been met and will continually meet the courts in determining what is an intimate acquaintance, within the meaning of the statute, is aptly epitomized by Temple, C., in *Estate of Carpenter*, 94 Cal. 407, where, in speaking of the

statute, he says: "Since it requires the drawing of a definite line between things which are separated only by degrees of difference, the rule is and must remain more or less indefinite"; and he adds, "A very large discretion must be conceded to the trial court.   If the conclusion reached is one which can be reasonably entertained, consistently with the above idea of intimacy (thereinbefore set out) this court cannot review the ruling."

Within the purview of the above reasoning and the cases cited, there was no abuse of discretion by the court below in holding the witness competent, as an *intimate acquaintance*, to express an opinion as to the mental sanity of Albert G. Wheelock.

The other alleged errors founded upon rulings in the cases of other witnesses upon the same point involve the same question, and do not vary in their facts sufficiently to alter the conclusion reached in the case considered, and need not therefore be elaborated.

The next error assigned is founded upon the denial by the court of an application by plaintiff for a jury trial.

It appears from the record that the cause was set down for trial by the court January 26, 1891, and notice thereof served upon the attorneys of plaintiff.

Prior to the commencement of the trial and prior to January 26, 1891, but at what precise date does not appear, the plaintiff in open court demanded a jury trial, which was refused by the court.

The facts stated in the complaint and the prayer for relief indicate the case to be one of equitable cognizance and therefore one in which plaintiff was not entitled to a jury.   (*Fish* v. *Benson,* 71 Cal. 434, 435; *Cassidy* v. *Sullivan,* 64 Cal. 266.)

The statement of appellant's counsel that the amended complaint contains matter which might have been omitted and that he demanded unnecessary relief, is in effect but a statement that a different cause of action sufficient for a recovery at law, with a demand for only

such relief as a court at law could grant, might have been prosecuted.

The answer must be, that the phraseology of the complaint was adapted to the relief sought, viz: setting aside and declaring null and void the assignment by plaintiff's testator to defendant Godfrey; that the money be declared the property of plaintiff and that he have a judgment therefor against the defendants.

The court committed no error in the premises. It is true the amended complaint stated "That the said pretended assignment and transfer was never signed, made, executed, or delivered by, etc., and then proceeds to set out at length the incompetency and weakness of the testator, the fraudulent practices of defendant Godfrey to induce him to sign the transfer, and avers that "if he ever signed said pretended assignment or transfer (he) was induced to sign the same by and through fraud and undue influence," etc.

This allegation is iterated and reiterated in various forms. That the complaint was ambiguous is apparent, but it is not apparent that the plaintiff should be permitted to take advantage of that fact, by now saying he did not mean what he said in his pleading and by repudiating the whole theory upon which he tried the cause. He proved by his own witnesses the execution of the assignment, and then sought to show the invalidity of the act by proving the incompetency of his testator.

The next error assigned relates to the action of the court in denying a motion on behalf of plaintiff to strike out the testimony of John Montgomery, M. D., the attending physician of deceased, and in overruling the objections of plaintiff to questions put to said Montgomery by defendant as to the mental condition of said deceased.

John Montgomery was called as a witness on behalf of plaintiff and stated that he was a physician, had been in practice as such for seventeen years, testified as to attending Wheelock as a physician from January, 1888, to October of the same year, when he died. Gave his

opinion as to his ailments, and described his death as being due to progressive paralysis, etc.

On cross-examination he testified as to the mental *status* of his patient, said he was thoroughly rational in conversation, and deemed him a competent gentleman; that his physical condition did not affect his brain, etc.

Upon the close of the testimony on behalf of the plaintiff, his counsel moved the court to strike out substantially all the testimony of Dr. John Montgomery, upon the ground that he was a licensed physician in attendance as such upon Wheelock, who was his patient, and that the information possessed by him was acquired while attending his patient, and was necessary to enable him to prescribe for Wheelock, and hence was incompetent under subdivision 4 of section 1881 of the Code of Civil Procedure of this state. The motion was denied by the court, and the ruling excepted to by plaintiff.

At a later stage of the case Dr. Montgomery was called as a witness on behalf of the defendant, and gave important testimony, including his opinion that Wheelock was mentally sane, etc., to which objections and rulings were had, and exceptions noted.

Conceding without deciding that Dr. Montgomery was an incompetent witness, for the reasons indicated by the plaintiff, appellant is not in a situation to urge such incompetency.

His testimony was received without objection from the defendants.

The question then presents this proposition: Can a party to an action introduce testimony which in the face of an objection would be incompetent, and upon discovering that it militates against him strike it out without the consent of the opposite party?

The question must be answered in the negative.

By offering the witness and eliciting testimony from him, he in effect declared the witness was competent and the testimony proper. In the absence of objections by defendants, it was the equivalent of consent, and was as binding upon them as a written stipulation agreeing to

the competency of the witness to testify to the given facts would have been.  The motion came too late. (*People* v. *Long*, 43 Cal. 446; *People* v. *Samario*, 84 Cal. 484.)

Rogers on Expert Testimony, at page 111, says: "When it is proposed to introduce in evidence the testimony of witnesses who are disqualified by these statutes, the party who desires to claim the benefit of the statutes must seasonably exercise the privilege by objecting to the evidence at the time it is offered.  It is too late after the examination has been insisted on, and the evidence has been received without objection, to raise the question of competency by a motion to strike it out": citing *Hoyt* v. *Hoyt*, 112 N. Y. 514, the doctrine of which fully sustains the text.

The objections to questions put to Dr. Montgomery, when a witness for defendants, were not as to his competency by reason of having been the physician of Wheelock, and are regarded as of little importance.

The first was to a question as to the state of Wheelock's mind on October 1, 1888, based upon his appearance, actions, condition and conversation.

It was objected that the "question was leading, and as suggestive and not the proper question, and further that he has testified that he did not form an opinion."

The witness answered: "Well, the man to my mind was perfectly sane."

The witness then said he formed an opinion and answered as before.

Again, to a question as to his opinion whether he was of sound or unsound mind, the witness answered: "I believe he was of sound mind."  Counsel objected that the witness was "not an expert and not proven to be."

Another question was as to the state of mind of Wheelock, in the opinion of the witness, from January, 1888, down to and including the time when he was stricken with this paralysis, which had been shown to have occurred some three days before his death.  This was objected to as "irrelevant, immaterial and incompetent, and as

covering periods of time and occasions when the witness did not see him, and could not express an opinion."

The witness answered that he never had the slightest doubt as to his sanity, it would have been an impossibility for me to do such a thing as that. A motion to strike out the answer as not responsive was denied.

The first question was not leading or suggestive in view of the preceding testimony in which the witness had stated at length that he had attended the deceased from January 8th to the time of his death in October, had described his ailments, physical condition, had conversed with him, etc.

The witness had been shown to be, as before stated, a physician of seventeen years' experience, and had testified as an expert for the plaintiff, and was entitled to be questioned as such.

As his physician during 1888, and being in the habit of visiting him as such, and at times as often as two or three times a day, he was competent to speak of his condition during the entire period from January to October, except as thus stated. The questions, answers and rulings of the court thereon were correct, and their propriety is sufficiently apparent to obviate the necessity of discussion.

We have examined most of the other errors assigned in the record, and find them either without merit or not of sufficient importance to warrant a reversal, and as appellant has contented himself with saying he does not waive them, and asking us to examine them, as set forth in the specification of errors, without any direction as to where they are to be found in a record of three hundred and seventy-three printed pages, we are justified in the conclusion that they are not important. (*Webber* v. *Clarke*, 74 Cal. 11; *West* v. *Crawford*, 80 Cal. 33.)

The order appealed from should be affirmed.

HAYNES, C., and BELCHER, C., concurred.

For the reasons given in the foregoing opinion, the order appealed from is affirmed.

HARRISON, J., GAROUTTE, J., PATERSON, J.

Hearing in Bank denied.