[Crim. No. 1024.    In Bank.—January 13, 1904.]

## THE PEOPLE, Respondent, v. RICHARD MANOOGIAN, Appellant.

CRIMINAL LAW—MURDER—INSANITY—EVIDENCE—OBSERVATION OF WITNESSES.—Upon a prosecution for murder, where the defense was insanity, and it appeared that the defendant more than one month prior to the homicide had received a severe injury to his head, and there was evidence tending to show a concussion of the brain and a derangement of his mental faculties; it was error in such case to refuse to allow witnesses not intimate acquaintances within the meaning of subdivision 10 of section 1870 of the Code of Civil Procedure to testify to their observation of his acts and conduct at various times between the time of such injury and the time of

the homicide, and to his appearance at those times as being rational
or irrational, or acting rationally or irrationally.

ID.—OPINION OF "INTIMATE ACQUAINTANCE"—DISCRETION OF COURT.—
The question whether a witness is such an "intimate acquaintance"
as to be allowed to give his opinion on the general question of
sanity or insanity is from its nature peculiarly addressed to the dis-
cretion of the trial court, and the appellate court will not inter-
pose, unless there is a clear abuse of discretion.

ID.—INSTRUCTION—CAUTION AGAINST COUNTERFEIT OF INSANITY.—An in-
struction taken *verbatim* from a decision of this court, and designed
to caution the jury against being imposed upon by an "ingenious
counterfeit of insanity," though it would be better omitted, will
not be held prejudicially erroneous.

ID.—REFUSAL OF PROPER INSTRUCTION—MENTAL DELUSION.—Under the
circumstances shown by the record a requested instruction upon the
subject of insanity or mental delusion as to a particular matter
which is not erroneous should have been given.

ID.—SELF-DEFENSE—IRRELEVANT MATTER—EVIDENCE—REFUSAL OF IN-
STRUCTION.—Where there was no question or evidence of self-
defense, any error in excluding evidence as to the position of the
hands of the deceased at the time of the homicide which had no
relevance except upon that question was without prejudice; and it
was proper to refuse a requested instruction upon the law of self-
defense.

APPEAL from a judgment of the Superior Court of Fresno
County. H. Z. Austin, Judge.

The facts are stated in the opinion of the court.

Frank Kauke, and W. D. Tupper, for Appellant.

U. S. Webb, Attorney-General, and J. C. Daly, Deputy At-
torney-General, for Respondent.

ANGELLOTTI, J.—The defendant having been convicted
of murder in the first degree, and adjudged to suffer imprison-
ment for life, appeals from the judgment and from the order
denying his motion for a new trial.

The defense was insanity, the homicide being admitted, and
the principal exceptions urged are based upon certain rulings
made in relation to the admissibility of testimony offered by
defendant to sustain that defense.

The homicide occurred on the evening of July 4, 1902. It
appeared that during the month of May, 1902, defendant re-

ceived a severe injury by being knocked down, his head strik-
ing the concrete pavement, and there was evidence tending to
show a concussion of his brain resulting therefrom, and a de-
rangement of his mental faculties existing from that time to
and including the time of the homicide. The prosecution made
practically no attempt to rebut the evidence introduced in this
behalf on the part of defendant. This much is said for the
purpose of indicating that the defense was not entirely with-
out merit, and for the purpose of showing the importance to
the defendant, on whom, under the rule in this state, the bur-
den rested to show that at the time of the homicide his mental
faculties were so deranged as to render him incapable of dis-
tinguishing between right and wrong in relation to the act
with which he was charged, of having all competent testimony
offered by him bearing upon that defense admitted for the con-
sideration of the jury.

Evidence as to the acts and conduct of defendant between
the time of his injury, May 25, 1902, and the date of the homi-
cide, July 4, 1902, was received on behalf of defendant, on
the issue of insanity. Such evidence was, of course, admissible
as bearing upon the question of his mental condition at the
time of the homicide. (*Estate of Toomes,* 54 Cal. 509, 516;[1]
*People* v. *Lee Fook,* 85 Cal. 300.) In this connection, various
witnesses who had seen and conversed on various occasions
with the defendant during that period of time were asked as
to his appearance on those occasions with reference to his
being rational or irrational, or acting rationally or irration-
ally. The witness, Isakoolian, who testified that he had known
defendant for one year, was "pretty well acquainted with him
during that time," and had seen him many times between the
time he was hurt and the date of the homicide, was asked,
"Well, now, what was his appearance at those times when he
talked with you, with reference to his being or acting as men
ordinarily do in their right minds, or otherwise?" The ob-
jection of the prosecution thereto on the ground that the wit-
ness had not shown a sufficient knowledge of defendant's acts
to give an opinion as to his sanity was sustained. The wit-
ness Eguinian, who testified that he had been "quite well
acquainted" with defendant for two years preceding the trial

[1] 35 Am. Rep. 83.

(October, 1902), that he had seen him frequently from the time he was hurt until July 4, 1902, and that he had noticed something different in his actions and demeanor after he was "hurt," was asked, "Now, just state to the jury how he would act, what peculiar ways he had, if any, after he got hurt." He answered, "Well, he was acting peculiar; *all his answers kind of not reasonable answers, and he was irrational; he was brooding over that trouble all the day, all the time."* On motion of the prosecution the court struck out all that portion of the answer that we have italicized, leaving the question practically unanswered. The witness was further asked, "Now, at the various times that you saw the defendant and talked with him, or observed him, noticed his conversation or his actions after that injury, what can you say as to the appearance of the defendant at those times with reference to his being or acting rational or irrational?" The objection of the prosecution to this question on the ground that the witness was not qualified to give an opinion and not competent to testify was sustained. Neither of these witnesses was allowed to testify as to the appearance of the defendant in the respect suggested by the questions noted, and exceptions were duly taken to the various rulings of the trial court.

These rulings were apparently based upon the theory that the witnesses were not "intimate acquaintances" of the defendant, within the meaning of that term as used in subdivision 10 of section 1870 of the Code of Civil Procedure, and that their opinions respecting his mental sanity were therefore not admissible. The questions noted, however, did not call for the opinion of the witnesses as to the mental sanity of the defendant, but for the result of their observations at the various times they came in contact with him, as to his appearance in the respects suggested. The distinction is a clear one, and has been pointed out in many decisions of this court. In *People* v. *Lavelle,* 71 Cal. 351, it was held that the trial court did not err in allowing a witness for the prosecution to testify as to the appearance of the defendant at the time of his arrest, with reference to his being rational or irrational, the question asked in that regard being almost precisely the question asked the witness Eguinian as to the appearance of defendant, and the objection urged being that the witness was not competent

under subdivision 10 of section 1870 of the Code of Civil Procedure. This court there said that the evidence sought to be elicited was not the opinion of the witness as to the mental sanity of the defendant, based on acquaintance with him, but was rather as to a fact,—viz., his appearance at the time,—and that the evidence was admissible. The court said in that case: "The appearance of a person at a given time is one thing; the opinion of a witness as to the mental condition of that person, based on an acquaintance with him, is quite another." This ruling was followed in *Holland* v. *Zollner,* 102 Cal. 633, 636, where the question asked the witness was the same as that asked in *People* v. *Lavelle,* 71 Cal. 351. The force of the opinion is somewhat weakened by the language used by the court in denying a rehearing, where it is said that conceding the question to have been erroneous, the error was not of sufficient importance to warrant a reversal. In the *Estate of Wax,* 106 Cal. 343, 349, however, a substantially similar question put to one not an intimate acquaintance was held to be a relevant, material, and proper question, on the authority of *People* v. *Lavelle,* 71 Cal. 351, and *Holland* v. *Zollner,* 102 Cal. 633. In *People* v. *McCarthy,* 115 Cal. 255, 260, a capital case, the jailer who received the defendant at the county jail on the day of his arrest, was permitted to testify that defendant appeared "rational" at that time, and this court, in Bank, held that under the rule laid down in the authorities cited, the evidence was unobjectionable. In *People* v. *Arrighini,* 122 Cal. 121, 123, the prosecution was allowed to ask certain witnesses as to the appearance and manner of the defendant shortly after the homicide. This court, in approving the ruling of the trial court, distinguished the case from *Estate of Carpenter,* 94 Cal. 406, relied on by the learned attorney-general, saying that in the last-named case the questions did not call for a description of the manner or conduct of the persons concerning whom the inquiry was being made, *nor whether he acted rationally or irrationally at any particular time.* The court further said, speaking through Mr. Justice Temple, who wrote the opinion in the *Estate of Carpenter,* 94 Cal. 406: "In *People* v. *McCarthy,* 115 Cal. 255, the court held that it was proper to ask a witness whether the defendant acted rationally or appeared 'rational' at a particular time. So I think any witness may

testify to the demeanor of the defendant, whether he was intoxicated, appeared to be excited, was angry, or timid.'. . . A witness may state whether the person was . . . melancholy, morose, peevish, irritable, or the opposite. And no doubt other mental habits may be testified to; such as whether he was incoherent, forgetful, or *irrational.*"

The reasons underlying the conclusion in the cases cited are well stated in *Holland* v. *Zollner,* 102 Cal. 633. Certain questions are of such a nature that it is impossible for a witness to convey to a jury an adequate conception of the ultimate fact ' except by announcing the result of his observation. This is particularly true in regard to the qualities suggested by Mr. Justice Temple in the portion of his opinion in *People* v. *Arrighini,* quoted above. As was said in *Holland* v. *Zollner,* 102 Cal. 633, "To say that a man acts *rational* or *irrational,* is but to describe an outward manifestation drawn from observed facts. It is the last analysis, the ultimate fact, deduced from evidentiary facts coming under observation, but so transitory and evanescent as to be like drunkenness, easy of detection and difficult of explanation. Such conduct is not so much a matter of judgment as of observation."

As was said of the person whose sanity was in question in that case, so here no one will doubt but the facts in relation to the conduct of defendant were admissible in evidence, and that could the witnesses have explained every look, gesture, expression, and motion, it would have been competent to do so. All that the doctrine asserted in the cases cited seeks to do is in such a case, "by reason of the impossibility of giving form to all these varied manifestations, to permit the witness from necessity to produce the result of the manifestation as a whole." The right of cross-examination affords the person against whom such testimony is given full opportunity to show whether the conclusion of the witness is warranted by the facts.

As has been said before, questions like those under consideration, do not call for the opinion of the witness as to the sanity of the person concerning whom the inquiry is being made. Such an opinion can properly be given only by an intimate acquaintance or an expert. They simply call for the result of the observation of the witness as to the manner or

conduct of such person at a certain time. That such person at a time shortly before the homicide appeared to be rational or irrational in conduct or conversation, is a fact which the jury are entitled to consider in determining the ultimate question as to whether or not he was insane at the time of the homicide.

The rulings of the trial court excluding this testimony were in conflict with the authorities hereinbefore cited, and, in our opinion, erroneous. We cannot say that defendant was not injured thereby.

The two witnesses already named, and one other, were asked as to their opinion as to defendant's sanity, and the objection of the prosecution that they had not been shown to be intimate acquaintances of defendant was sustained and the testimony excluded. This court has many times said that the question as to whether one has been shown to be an intimate acquaintance, and therefore qualified to express an opinion as to the sanity of a person, is from its nature peculiarly one that is addressed to the discretion of the trial court, and that the appellate court will not interpose unless an abuse of that discretion is clearly apparent. (*Wheelock* v. *Godfrey,* 100 Cal. 578, 584, and cases there cited; *People* v. *McCarthy,* 115 Cal. 256.) While the evidence as to the extent of acquaintance of these witnesses was such that this court would have held that the trial court was warranted in allowing them to give their opinion as to defendant's sanity, the reasons for such opinion being also given, as required by the statute, we cannot say that there was any abuse of discretion in holding that they were not intimate acquaintances.

Complaint is also made of a portion of an instruction given by the court upon the subject of insanity. This portion was taken *verbatim* from *People* v. *McCarthy,* 115 Cal. 265, and was designed to caution the jury against being imposed upon by an "ingenious counterfeit of insanity." It has been given in several cases, and while this court has frequently said that it would be better if this instruction were omitted altogether, it has also been said that as it has been given so often in the past and approved by this court, that it will not now be held prejudicially erroneous. (*People* v. *Methever,* 132 Cal. 330; *People* v. *McCarthy,* 115 Cal. 256.)

We see no error in defendant's requested instruction No. 26, upon the subject of insanity or mental delusion as to some particular matter, or regarding a particular person, and are of the opinion that under the circumstances shown by the record, it should have been given. It is claimed that the court erred in sustaining the objections to certain questions asked on cross-examination of Julia Johnson, a witness for the people, as to whether or not she had, either at the coroner's inquest, or on the preliminary examination, said anything at all as to the position of the hands of the deceased at the time of the homicide, and concerning which she did testify at the trial on her direct examination. If it be conceded that the ruling was erroneous, the error was without prejudice. The testimony was material only upon the question of self-defense, and there was no testimony tending to show that the homicide was committed in self-defense.

Certain instructions requested by the defendant upon the law of self-defense were properly refused, for there was no evidence in the case to warrant the giving of the same.

None of the other points made calls for notice.

The judgment and order denying a new trial are reversed and the cause remanded.

Shaw, J., McFarland, J., Lorigan, J., Henshaw, J., Van Dyke, J., and Beatty, C. J., concurred.