[Sac. No. 1992.　Department One.—June 24, 1912.]

In the Matter of the Estate of NANCY HUSTON, Deceased.

Will—Contest of Probate — Evidence—Mental Incompetency of Testatrix.—On a contest of the probate of a will, the evidence is held sufficient to support the conclusion of mental incompetency of the testatrix at the date of the execution of the alleged will.

Id.—When Mental Capacity Exists in Aged and Infirm Testator. A testator, although feeble in health, suffering under disease, aged

and infirm, has the mental capacity to make a will, if he is able to understand and carry in mind the nature and situation of his property and his relations to his relatives and those around him, with clear remembrance as to those in whom and those things in which he has been most interested, capable of understanding the act he is doing, and the relation in which he stands to the objects of his bounty, free from any delusion, the effect of disease, which might lead him to dispose of his property otherwise than he would if he knew and understood what he was doing.

ID.—EVIDENCE—PHYSICIAN OF TESTATRIX—OBJECTION TO COMPETENCY MUST BE MADE AT TRIAL.—On such contest, an objection that a medical witness, who had testified to the unsoundness of mind of the testatrix, was incompetent, under subdivision 4 of section 1881 of the Code of Civil Procedure, for the reason that his information was acquired while treating her as his patient, cannot be availed of on appeal, unless objection to the testimony of the witness was specifically taken on that ground in the trial court, either by objections to the questions asked the witness, or by motion to strike out his evidence after the facts were elicited showing the incompetency.

ID.—COMPETENT TESTIMONY OF PHYSICIAN.—Subdivision 4 of section 1881 of the Code of Civil Procedure, did not render incompetent the testimony of the medical witness as to the conditions under which he knew the testatrix, and questions asked the witness designed to elicit such facts were not objectionable on that ground.

ID.—EVIDENCE OF MENTAL CONDITION AT GIVEN TIME.—To show the condition of one's mind at a given time as respects sanity or insanity, evidence tending to show such condition both shortly before and shortly after the time is admissible.

ID.—INTIMATE ACQUAINTANCE—NURSE ATTENDING TESTATRIX.—A nurse, who became an attendant on the testatrix about three weeks after the execution of the will and who thereafter remained in constant attendance upon her for about eight weeks, is competent, as an intimate acquaintance, to testify to her opinion of the mental condition of testatrix during the period of her attendance.

ID.—MOTION TO STRIKE OUT TESTIMONY PART OF WHICH WAS COMPETENT.—Where a witness has testified to his opinion of the mental condition of the testatrix, and also to other matters, a motion to strike out the entire testimony of the witness on the ground that he was not an intimate acquaintance will not lie.

ID.—PRIMA FACIE SHOWING OF INTIMATE ACQUAINTANCE.—A witness who testified that he had known the testatrix all his life, had met her off and on once a month or oftener, and had observed her appearance, conduct, and conversation, shows himself to be *prima facie* an intimate acquaintance.

ID.—MERE OBSERVER NOT INTIMATE ACQUAINTANCE—EVIDENCE OF AP-
PEARANCE.—A mere observer, who is not an expert or an intimate
acquaintance, while he may testify as to the appearance of a person
at a given time, may not give his opinion as to the mental sanity
of a person, except where he is a subscribing witness to a writing,
the validity of which is in dispute, where he may give his opinion
respecting the mental sanity of the signer.

APPEAL from an order of the Superior Court of Solano
County refusing probate of an alleged will and from an
order refusing a new trial. A. J. Buckles, Judge.

The facts are stated in the opinion of the court.

L. G. Harrier, T. T. C. Gregory, and Theodore W. Chester,
for Appellants.

Theodore A. Bell, and Frank R. Devlin, for Respondent.

ANGELLOTTI, J.—This is an appeal by the surviving exe-
cutor named in the document offered for probate as the last
will of deceased, and by Maggie Clark, a legatee named in
said document, from an order denying probate of said docu-
ment as the last will of deceased, and from an order denying
their motion for a new trial.

Deceased died in the latter part of the year 1909, leaving
an estate valued at about six thousand dollars. On Decem-
ber 1, 1905, when 86 years of age, she had executed the docu-
ment offered for probate as her last will. By this document,
after providing for burial and payment of her debts, she
gave to the contestant, Anne Murray, her only child, twenty-
five dollars "and no more. Her conduct and actions toward
my husband and myself having been such in the past that I
do not wish to make any further bequest to her." She then
gave to her niece, Maggie Clark, two hundred dollars "as a
small return for the services rendered to my husband and
myself while we were in trouble," and to the trustees of the
First Presbyterian Church of Vallejo, five hundred dollars
for the use of the congregation. She then gave all the rest
and residue of her estate one-half to said Maggie Clark and
the other half to the trustees of the general assembly of the
Presbyterian Church of the United States of America, to be
distributed in equal amounts among seven boards of said

church. She appointed Rev. Theodore F. Burnham and Philip Steffan executors without bonds. When the document was offered for probate it was contested by the daughter, Anne Murray, on the ground, among others, that the deceased at the time of its execution was not of sound and disposing mind and memory and not competent to execute a last will and testament. The verdict of the jury was in favor of contestant on this ground of contest, and judgment was thereupon given denying the application for the admission of the document to probate.

1. It is very earnestly urged that the evidence is not legally sufficient to support the conclusion of mental incompetency of the deceased at the date of the execution of the alleged will. A full consideration of the evidence has satisfied us that this is not one of the cases in which it fairly may be said that there is only "some slight pretense of evidence" to support the verdict, or that "the jury were evidently actuated by motives which they had no right to consider." There was substantial evidence in support of the conclusion reached, and it is our opinion that the most that can be said in appellants' favor on this point is, as was said in the case from which we have already quoted, "the verdict might with propriety have been the other way; but we cannot say that it was entirely outside the legitimate province of the jury." (*Estate of Tibbetts,* 137 Cal. 123, [69 Pac. 978].)

We cannot agree at all with the learned counsel for appellants that respondent is compelled to rely solely on a showing of insane delusions on the part of deceased to sustain the verdict. The ground of contest was want of competency of the deceased to make a will. The essentials to a sound and disposing mind and memory are well stated in *Estate of Motz,* 136 Cal. 558, 562, [69 Pac. 294, 295], cited by appellants, as follows:—

"The soundness of mind required for making a will has relation to the act of the testator in making final disposition of his property as he desires. Although feeble in health, suffering under disease, aged and infirm, the testator, if of sound mind with reference to the disposition of his property, may make a will. If he is able to understand and carry in mind the nature and situation of his property and his relations to his relatives and those around him, with clear remembrance

as to those in whom and those things in which he has been mostly interested, capable of understanding the act he is doing, and the relation in which he stands to the objects of his bounty, free from any delusion, the effect of disease, which might lead him to dispose of his property otherwise than he would if he knew and understood what he was doing, he has the capacity to make his will. (*Whitney* v. *Twombly*, 136 Mass. 145.)''

The law in this behalf was correctly stated to the jury in the following instructions, the first being given at the request of the appellants, and the second being given at the request of the contestant:

''1. The law is, that to be of sound and disposing mind and memory, so as to be capable of making a valid and binding will, it is sufficient if the testatrix has an understanding of the nature of the business in which she is engaged—a recollection of the property she means to dispose of—of the persons who are the objects of her bounty and the manner in which it is to be distributed among them.''

''3. If you believe, from preponderance of the evidence in this case, that at the time of the execution of the will herein Nancy Huston was not able to understand and carry in mind the nature and situation of her property, and her relations to her relatives and those around her, with clear remembrance, as to those in whom and those things in which she had been mostly interested, and not capable of understanding the act she was doing and the relation in which she stood to the objects of her bounty, then I instruct you that your verdict must be for the contestant herein.''

There was evidence tending to show that deceased commenced to fail quite rapidly, both physically and mentally, in the summmer of 1905; that she thought a nurse at the St. Helena Sanitorium where she and her husband were staying had knocked her down and blackened her side, and had put her in a tub and tried to suffocate her; that she thought people were trying to poison her; that she was distrustful of her neighbors, and did not want any of them to come near her place; that she took no interest in things and was melancholy; that these conditions continued until the last of October, when Mrs. Murray left her and her husband at the ranch. When Mrs. Murray left she employed a man to go

to the ranch and look out for the old people, but they refused to allow him to stay, and deceased thereafter insisted to several people that Mrs. Murray had sent this man out to kill them. Shortly after Mrs. Murray left, deceased and her husband went to the house of the Clarks to live, and remained there until after the will was executed. Several witnesses, who had known the deceased for many years, gave it as their opinion that her mind was to some extent impaired during the year 1905. On December 29, 1905, she was taken seriously ill and was in Dr. Hogan's hospital at Vallejo from that date until February 22, 1906. Both Dr. Hogan and Miss Huntington, a nurse, were of the opinion that she was of unsound mind during the whole of this period. The testimony as to the making of the will was very meager, the lawyer who prepared it, Mr. Harvey, who was one of the subscribing witnesses, the other subscribing witness and Mr. Burnham, who was present, all having died before the trial. The only other person present was Mr. Steffan, who was appointed one of the executors. He was present in the lawyer's office the day before, and testified that deceased said, when Mr. Harvey asked her how she wanted the will drawn, that she would like to have a part of the money go to the church, and if there was any left, a part of it to Mr. Clark, and some "to the boy in San Jose," and that when asked about "Annie" (Mrs. Murray), she said, "I don't feel like it, she got enough. She got all the cash money on the ranch and everything about eaten up and she is going to have enough. I am willing to give her $25.00." As a matter of fact, Mrs. Murray had received nothing to speak of from the ranch. The will as finally drawn and signed made no provision for anybody in San Jose. In addition to this, there was evidence tending to show an antagonism to and distrust of the daughter entirely unnatural and unwarranted by anything the daughter had done, and accountable for only on the theory of impaired mental power. There is in all this enough, in our opinion, to legally sustain the conclusion of the jury and the trial judge, that the deceased did not measure up to the standard in the matter of capacity to make a last will. It is true that there was considerable evidence tending to rationally explain the attitude of the mother toward her daughter in a manner entirely consistent with absolute soundness of mind, and tend-

ing to show that deceased was fully competent on December 1, 1905, to make a will, but to our minds all this does no more than create a conflict of evidence, upon which the decision of the jury and the judge of the trial court is conclusive.

2. It is claimed that the trial court erred in allowing Dr. Hogan to give his opinion as to the sanity of deceased while she was in his hospital at Vallejo from December 29, 1905, to February 22, 1906, it being urged that such testimony was incompetent in view of subdivision 4 of section 1881 of the Code of Civil Procedure, which provides that "a licensed physician or surgeon cannot, without the consent of his patient, be examined in a civil action as to any information acquired in attending the patient, which was necessary to enable him to prescribe or act for the patient."

We are satisfied that it must be held that this objection is not available to appellants. When the witness was called he first testified as to his qualifications and experience as a physician and surgeon, and that he knew deceased during the month of December, 1905. He was then asked under what conditions he knew her, and appellants objected to the question on the ground stated above. This objection was not good for the question did not call for any testimony prohibited by subdivision 4 of section 1881 of the Code of Civil Procedure. However, the question was not pressed. A new question was framed and the witness was then allowed to testify, without objection, that he saw deceased daily and many times a day between December 29, 1905, and February 22, 1906. He was then asked: "From your observations of her what, in your opinion, was her mental condition, was it sound or unsound during that period?" Up to this point it had not been made to appear that deceased was a patient of Dr. Hogan. Objection was interposed to this question solely on these grounds, viz.: "It is double joined, two questions in one. First, the doctor, if he testifies to mental unsoundness, must testify if he know, that he knows her mental condition. In the second place . . . the doctor is not qualified. It does not appear from the testimony of the witness that he is qualified to pass upon the question of mental soundness, that he is not qualified to that extent. Furthermore, that it does not appear that he had, at that time, a sufficient opportunity of observation to determine whether or not the patient was of

sound or unsound mind." Appellants asked no opportunity to examine the doctor further as to his qualifications as an expert, and, as will be seen from what we have said, did not object to the testimony on the ground that the same was incompetent under subdivision 4 of section 1881 of the Code of Civil Procedure. The objection made was not good. There had been a sufficient *prima facie* showing of the qualifications of the doctor as an expert. (See *Wheelock* v. *Godfrey,* 100 Cal. 578, 589, [35 Pac. 317]; *Estate of Dolbeer,* 149 Cal. 227, 248, 9 Ann. Cas. 795, 86 Pac. 695].) Unquestionably, there had been a sufficient *prima facie* showing of opportunity for observation. The objection was overruled. Even then the attorneys for contestant suggested to the attorneys for appellants that they were at liberty to ask the witness "any preliminary question to determine whether or not as a physician he may have got information that he used in declaring his opinion" but one of the attorneys for appellants said, "We are properly advised and satisfied with the situation." Dr. Hogan then answered the question, saying: "I took observations from her, and from my observations from December 29th to February 22d, I thought she was of unsound mind." Appellants immediately moved "to strike out the answer on the same grounds as stated in the objection." The motion was denied. This was the only motion to strike out such answer that was made at any time. It was not until afterward, and particularly during the cross-examination, that evidence was elicited showing that deceased was a patient of Dr. Hogan between the dates mentioned.

There is no ground for holding that the trial court erred in any of the rulings we have set forth. So far as the point urged in the briefs is concerned, the evidence was received without objection, and no motion was made to strike out such evidence after the facts were elicited upon which appellants base their claim that it was incompetent under subdivision 4 of section 1881 of the Code of Civil Procedure. A judgment cannot be reversed because of the admission of evidence incompetent under such a statute, where objection is not made to its admission on that ground in the trial court. (See *Wheelock* v. *Godfrey,* 100 Cal. 588, [35 Pac. 317].) There was no such objection interposed to the evidence elicited, either at the time it was elicited, or thereafter when all of

the facts tending to show the relation of physician and patient had been shown. The case of *Green* v. *Southern Pacific Co.,* 122 Cal. 565, [55 Pac. 577], is not in point: There the evidence complained of was expressly objected to, and an exception had been reserved to the ruling of the court. It was sought to overcome this by showing that similar testimony was subsequently received from other witnesses without objection, and it was simply held that the party having once formally taken exception to a certain line or character of evidence, he was not required to keep on objecting, and that his silence would not debar him from having the exception that he had taken to that line of evidence reviewed. Here there was never any ruling on the point made by appellants, and, of course, no exception. When the objection on this ground was made, it was not good, but, as we have shown, the question was withdrawn and a new question framed.

3. The objection to the questions asked the nurse, who was in constant attendance upon deceased while she was in the hospital, as to her condition of mind during that time was as follows:—

"We object to the witness as not qualified to testify to the soundness or unsoundness of mind of Nancy Huston at the time of the execution of the will, not having any knowledge of the testatrix at that time. The knowledge of the witness appears to have been only of the time when she was suffering from an acute disease up in the hospital. Therefore, it is incompetent, irrelevant and immaterial, not an intimate acquaintance, and not a sufficient observation for the formation or expression of an expert witness."

This objection was properly overruled. The witness was not asked as to her opinion as to the condition of the mind of the deceased *at the time of the execution of the will.* The question was directed to a period of time a few weeks after the day the will was executed. It is, of course, well settled that to show the condition of one's mind at a given time as respects sanity or insanity, evidence tending to show such condition both shortly before and shortly after the time is admissible. A sufficient showing was made in regard to this witness to warrant the trial court in holding that she was entitled to give her opinion as an intimate acquaintance of deceased. Her testimony already given contained a statement

of certain reasons for her conclusion. During a large portion of the period when the witness was on such intimate terms with deceased, the latter had passed the acute stage of her sickness. The arguments of learned counsel for appellants in regard to this evidence, go rather to the question of the weight to be accorded it, than to the question of its admissibility.

4. The motion to strike out the testimony of Mr. Thoreson upon the ground that he was not an intimate acquaintance was properly denied. We do not see how it could be held otherwise than that he was an intimate acquaintance, in view of his testimony as to the extent and nature of his acquaintance with deceased. This witness testified very fully as to his reasons for his conclusion, and the weight to be given that conclusion, in view of the reasons given therefor by the witness, was properly a question for the jury. In no event would it have been proper to grant the motion to strike out, even if the opinion should not have been allowed, for the motion was expressly directed "to the entire testimony of the witness," and there is no pretense that any of such testimony was objectionable other than the conclusion of the witness as to the unsoundness of the mind of the deceased.

5. In the closing brief of appellants it is urged that the testimony of Robert H. Brown as to the condition of mind of deceased should have been stricken out. The record shows no motion to strike out such evidence. The only objection to his evidence was one made after he had testified substantially that in his opinion she was of unsound mind, and the objection was simply, "that the witness has not shown sufficient personal acquaintance to qualify him to testify." He had testified that he had known deceased all his life, that he met her "off and on maybe, once a month and maybe oftener," and that "he observed her appearance, her conduct and talk and her language and her conversation." This certainly was a sufficient *prima facie* showing to warrant a conclusion that the witness was an intimate acquaintance.

We agree entirely with learned counsel for appellants in their claim that the mere observer who is not an expert or an intimate acquaintance may not give his opinion as to the mental sanity of a person, except where he is a subscribing witness to a writing, the validity of which is in dispute, where

he may give his opinion respecting the mental sanity of the signer. (Code Civ. Proc., sec. 1870, subd. 10.) The giving of such an opinion is a very different thing from testimony as to the appearance of a person at a given time, which testimony may be given by any observer. (See *People* v. *Manoogian*, 141 Cal. 592, [75 Pac. 177].) One or two remarks of the trial court made in ruling on the admission of evidence of alleged intimate acquaintances tend to indicate that there was a misapprehension in the mind of the learned judge of the trial court as to this, but there was nothing in the language used to indicate that the court was not satisfied that each of these witnesses was an intimate acquaintance, and we cannot hold as to any of the instances that the admission of the evidence was erroneous.

The orders appealed from are affirmed.

Shaw, J., and Sloss, J., concurred.

Hearing in Bank denied.