[S. F. No. 3710. Department Two.—June 15, 1904.]

In the Matter of the Estate of MARY McKENNA, Deceased. PATRICK KEARNS et al., Appellants, v. JANE DALY, Executrix, et al., Respondents.

ESTATES OF DECEASED PERSONS—CONTEST OF WILL—SUFFICIENCY OF EVIDENCE—SUPPORT OF VERDICT.—Upon the contest of a will admitted to probate, for alleged unsoundness of mind of the testatrix and undue influence exerted over her, where the evidence was conflicting as to the unsoundness of mind and positive against the existence of undue influence, a verdict in support of the will is conclusive as to the facts, and will not be disturbed upon appeal for alleged insufficiency of the evidence.

ID.—COMPETENCY OF WITNESSES AS TO SANITY—"INTIMATE ACQUAINTANCES"—DISCRETION OF COURT.—The determination of the question of fact as to whether witnesses in support of the will were "intimate acquaintances" of the deceased, qualified to testify to their

[1] 52 Am. Dec. 711.

opinion as to the sanity of the testatrix, is within the discretion of
the trial court, and this court will not interfere with the exercise
of that discretion, where no abuse of it appears.

ID.—REFUSAL OF INSTRUCTIONS SUBSTANTIALLY GIVEN.—It is not error
to refuse requested instructions which are substantially embodied in
the charge given by the court.

ID.—INSTRUCTIONS AS TO INSANE DELUSIONS.—Where no insane delu-
sions of the testatrix had any relevance to the contestants, it was
proper for the court to particularly instruct the jury upon that
subject so as to leave no doubt in the minds of the jury that it was
only such insane delusions as actually influenced her in the making
of the will, and which caused its production to the prejudice and
injury of the contestants, which would invalidate the will.

ID.—DECLARATIONS OF PERSONS NOT INTERESTED—KNOWLEDGE OF WILL—
HEARSAY—ANTICIPATION OF CROSS-EXAMINATION.—The declarations
of a person not interested in the will, and not made in the presence
of any interested person, as to his knowledge of the will and its
contents, are hearsay and inadmissible as testimony in chief for the
contestant.   Such declarations were not admissible in anticipation
of the cross-examination of the person who made them as a witness
for the defense, who subsequently testified in full as to the con-
versations, the accuracy of whose statement was not then questioned,
no foundation being laid for the admission of his declarations in
rebuttal.

ID.—EVIDENCE UPON QUESTION OF SANITY.—It was proper to admit con-
versations had with the testatrix prior and subsequent to the making
of the will so as to permit the jury to judge of the mental condition
of the testatrix at those times, as disclosed by her conversations,
declarations, acts, and conduct.

ID.—CROSS-EXAMINATION—ANSWERS NOT RESPONSIVE STRICKEN OUT.—
A party cross-examining the witnesses of his adversary is entitled
to have answers not responsive to the questions asked stricken out
on that ground.

ID.—TEMPORARY SEPARATION OF JURY—AFFIDAVIT OF BAILIFF.—In civil
cases mere temporary separation of the jury after they had retired
to deliberate upon their verdict is not sufficient to set it aside, if
no prejudice appears to the moving party, and no misconduct is
shown materially affecting his substantial rights.   Where any pre-
sumption of improper conduct is repelled by the affidavit of the
bailiff in charge of the jury which leaves it doubtful whether the
jury were separated at all, except technically, there is no ground for
disturbing the verdict.

ID.—ISSUE AS TO NON-EXECUTION OF PROBATED WILL—BURDEN OF PROOF
UPON CONTESTANT — ABSENCE OF EVIDENCE — FINDING.—Upon the
contest of a will after probate, where the non-execution of the will
was made an issue, the burden of proof is upon the contestant to
prove its non-execution, and if he introduces no evidence upon that

subject, but abandons the issue, the court was not required to take
any additional evidence in favor of the probate of the will; and
where the verdict was in support of the will upon other issues, the
court was authorized to find and adjudge that the will was duly
executed.

ID.—SETTING ASIDE OF JUDGMENT—VERDICT NOT AFFECTED—FINDINGS
AND JUDGMENT.—An order setting the judgment aside on motion
of the contestants, did not have the effect to set aside the verdict
or to entitle the contestants to a new trial of all the issues, and the
court was authorized to refuse to allow the contestants to introduce
further evidence as to the non-execution of the will, and could
again render findings and judgment upon the verdict and the former
probate of the will.

APPEAL from a judgment of the Superior Court of the
City and County of San Francisco and from an order denying
a new trial. James M. Troutt, Judge.

The facts are stated in the opinion of the court.

William J. Herrin, for Appellants.

Gavin McNab, for Executrix, and Father McCue, Respondents.

Frank J. Sullivan, for Sisters of Mercy, etc., Respondents.

E. H. Rixford, for Margaret Higgins, Respondent.

E. Myron Wolf, for David Garron, Respondent.

LORIGAN, J.—This is a will contest.

The decedent was unmarried, had resided in San Francisco
a great many years, and by her will, executed October 24,
1898, disposed of her estate in favor, mainly, of friends resid-
ing in that city.

The will was duly admitted to probate, and within the time
allowed by law this contest was inaugurated by cousins of the
deceased, residing in Ireland, and was based upon alleged
unsoundness of mind of the testatrix when the will was made,
and undue influence exerted over her by divers persons (whose
names are not mentioned in the complaint), under which the
making of the will was procured.

The evidence in the case was addressed to these two issues,
and the jury having found in favor of proponent on both, the

contestants appeal, both from the judgment and from the order denying their motion for a new trial.

1. It is insisted that the evidence was insufficient to justify the verdict of the jury upon either issue. But, as might well be supposed, there was a conflict in the evidence upon these points, mainly upon the matter of the soundness of the mind of testatrix when the will was executed, as that seems to have been the main issue. As to the claim of undue influence, we doubt very much that any case was made by the contestants. There was nothing offered in their behalf which bore directly on the point. And any implication which might arise from such evidence as was offered was met by positive evidence upon the part of proponent of its non-existence.

Assuming, however, that there was some evidence for contestants upon this issue, it, like that upon the mental soundness of testatrix, raised a conflict, and under the familiar rule this court cannot disturb the verdict. From this conflict the jury resolved the matter in favor of proponent, and under such circumstances their verdict is determinative and conclusive upon the subject.

2. A number of errors are alleged to have been committed by the court in admitting and rejecting testimony.

It is insisted, first, that it was error to permit a number of witnesses, called for the proponent, to testify, over the objection of contestants, as to the mental condition of deceased, it being claimed that they were not intimate acquaintances, within the requirements of subdivision 10 of section 1870 of the Code of Civil Procedure, which permits "the opinion of an intimate acquaintance respecting the mental sanity of a person, the reason for the opinion being given," to be given in evidence. With the exception of probably three of them, all these witnesses were old friends of the testatrix; the most of them had known her for upwards of twenty years, some for a longer period; they were on terms of social intimacy with her, and had seen and conversed with her immediately before, and after, the execution of the will. They were "intimate acquaintances" under any definition of that term, as employed in the section. As to the three others, their acquaintance was more limited in point of time, but they were acquainted with her, had met her on several occasions, and had had similar conversations with her about the same time. One

—John Kelly—had known her eleven years, had insured her property for a long time, and conferred with her at intervals about it, up to the time of her death in 1899; he had talked to her three or four times during the last five years of her life. Another—J. W. Lund—had, during the period it was claimed she was insane, seen and talked with her a dozen times. Another—Ellen Blangy—had known her over four years, and conversed with her on general subjects about the time the will was made.

The testimony of all these witnesses showed that they were acquainted to some extent with the testatrix, and as it is difficult to lay down any definite rule as to what constitutes an "intimate acquaintance," it has been repeatedly held by this court that the determination of that fact, under the statute, must be committed to the discretion of the trial court, and when that court has determined, from their testimony, that given witnesses were "intimate acquaintances," and permitted them to express an opinion, this court will not interfere with the exercise of that discretion, unless there has been a clear abuse of it, and, considering the evidence of these witnesses, we cannot say that there was any such abuse. (*People* v. *Pico*, 62 Cal. 50; *Estate of Carpenter*, 94 Cal. 406; *Wheelock* v. *Godfrey*, 100 Cal. 578; *In re Wax*, 106 Cal. 351.)

Complaint is made because the court refused to permit contestants to inquire of one of their witnesses—Mrs. Anderson—whether one Thomas Daly had stated in her presence, immediately after the death of testatrix, that he knew she had made a will and that he knew its contents.

Thomas Daly was the husband of Jane Daly, at whose house the testatrix was living when the will was made, and in which will she was named as one of the devisees and nominated as executrix. Daly himself was not a devisee or legatee under the will, and was not one of its proponents.

The witness, of whom these inquiries were made, was one called in the main case of contestants, before the proponent had put in any evidence, or Thomas Daly had been called as a witness, as he subsequently was. From the tenor of the inquiry, it appears that it had reference to some conversation in which Thomas Daly participated, but at which Mrs. Daly was not present.

We think the ruling of the court was correct, for the reasons shadowed forth in our statement of facts relative to the point.

Counsel contends that the evidence was admissible because contestants had alleged that Daly was one of the parties who exercised undue influence, and an affirmative answer might tend to show this, and that the declarations were also admissible as tending to show the condition of testatrix's mind.

It was not alleged that Daly was one of such parties. In fact, as we have heretofore stated, there is no allegation that any particular person exerted such influence; the allegation is that divers unnamed persons exerted it. Neither is it at all apparent how proof of a declaration on Daly's part, of knowledge of the existence of a will or its contents, could tend to prove undue influence, or show the condition of the mind of the testatrix. Nor was such evidence at all admissible against the proponent of the will. Daly was not a proponent, or devisee, or legatee. He had no interest in the will, and his declarations could not bind those who had such interest, either as proponent, or devisees, or legatees. He was a stranger, and his declaration, at best, would be but hearsay evidence and inadmissible.

It is apparent from the questions asked that the object of the contestants was to anticipate the defense of proponent in as far as Daly's testimony might be concerned. This, however, was not proper, because at this stage of the case it could not be known that Daly would be called as a witness. If he was not, the evidence would be wholly irrelevant, and if he was, the law afforded ample opportunity to the contestants to make these inquiries directly of him; and if they were material, and he denied any statement which they claimed he made, they could prove it upon rebuttal. Daly was subsequently called as a witness for the proponent, and, from the nature of his testimony, counsel had, if he deemed the inquiries which he previously sought to make pertinent, ample opportunity, of which he did not avail himself, to cross-examine Daly upon the subject, and lay the foundation for the introduction of such evidence as he claims the court improperly excluded. Daly purported to give all the conversation he had with the witness—Mrs. Anderson—and on cross-

examination counsel for contestants do not seem to have questioned its accuracy.

Exception is also taken to the ruling of the court permitting witnesses to state conversations had with the testatrix prior and subsequent to the making of the will. The court was quite impartial in this regard, and permitted them on the part of both contestants and proponent. These conversations were admitted, not for the purpose of proving that what the testatrix said to the witnesses was true, or to establish the matters referred to as facts, but simply to permit the jury to judge of the mental condition of the testatrix at those times, from the conversations had with her. Great liberality is allowed under the law as to the kind of evidence which may be admitted for this purpose, and the period of time it may cover. The rule permitting the introduction of such conversations, or the declarations of a testator, is quite liberal, and much may be admitted under it which, if offered as testimony to prove facts, would be rejected. The primary, and it may be said the exclusive, purpose of allowing it, is to enable the jury to form an intelligent conception of the real state of mind of a testator, as disclosed by his conversations, declarations, acts, and conduct. This is the most satisfactory evidence. It would be difficult to formulate any general rule which could be applicable to all cases; hence, much must be necessarily left to the discretion of the judge of the lower court, both as to the period of time over which such testimony may extend, and its character. In the case at bar, the evidence was confined to general conversations embraced within a reasonable period, both prior to and subsequent to the making of the will, and limited exclusively to the purpose of showing the condition of mind of the testatrix. In this connection it is to be remembered that there were two issues before the jury—mental capacity and undue influence—and that this evidence was offered on the question of mental capacity alone. We are not concerned with what the rule may be if the evidence were offered upon undue influence, or that, if offered on such issue, it would be inadmissible (*In re Calkins*, 112 Cal. 296; *Estate of Gregory*, 133 Cal. 137), because it was not offered upon that point. And, as so offered, on mental capacity, the conversations did not involve anything concerning the execution of the will, the circumstances attending it, or its terms or

provisions, except in one instance, where incidental reference was made by the testatrix to the fact that she had lost a diamond ring, of which she had made a special bequest to a certain person in her will. This, however, was incidental, and a necessary part of the conversation, and, under these circumstances, no reasonable objection can be taken to it.

The court did not err in striking out portions of answers given on cross-examination of certain of contestants' witnesses. The portions stricken out were not responsive to the questions. While the rule may be somewhat stringent as to concluding a party by the answers of his own witnesses in general response to a question, or binding him by irrelevant answers to irrelevant questions, still it never has been held, or should be, that a party is bound by the irresponsive answers of his adversary's witnesses, and we cannot understand why it should seriously be contended for.

4. Upon the instructions. Both sides prepared instructions on the law applicable to the issues, and the court contented itself with confining its charge to the giving of such of them as it deemed correct. It refused one requested by contestants, defining what constituted a sound and disposing mind, which it is claimed should have been given. But, as the instructions of contestants which were given, as likewise those of proponent, fully and clearly enlightened the jury on that point, no complaint will lie because the court did not accumulate definitions on the subject.

Contestants also complain of a line of instructions given at the request of proponent, on the subject of insane delusions. We do not understand counsel to question their legal accuracy, but rather to insist that they were inapplicable to any issue, and hence, misleading and prejudicial.

In their complaint contestants alleged that the decedent, at the time of the execution of her will, was possessed of insane delusions concerning her relatives, and that her will was executed as a direct result of such delusions. They also had the court instruct the jury, upon their request, on the subject of insane delusions as an element in determining testamentary soundness of mind. These instructions were general. The instructions given at the request of proponent on the same subject were special. There was evidence in the case from which the jury might have been warranted in finding that the

deceased was possessed, about the time when the will was made, of an insane delusion that one of her tenants intended to kill or grievously harm her, and possibly other delusions. There was not a particle of evidence, however, to show that she entertained any insane delusions as to the contestants— her second cousins—or that she ever saw them or knew of their existence.

It was doubtless argued to the jury (and this was·the only theory upon which contestants could have asked for the general instruction) that these insane delusions were an important factor in showing that the testatrix was insane.

As it is not the existence of any insane delusion which will invalidate a will, but only the existence of such as has actually influenced a testator in making a will, and which caused its production, to the prejudice and injury of contestants, it was proper for the court to particularly instruct the jury upon this subject, so that there might be no doubt in their minds as to the law, and to provide for a proper application of the evidence under it.

5. The point is made that the jury were permitted to separate after they had retired to deliberate upon their verdict. This matter was presented to the court on the motion for a new trial, upon affidavits, from which it appears that the jury, after retiring, having asked for further instructions, the bailiff proceeded to bring them into court for that purpose. On the way to the courtroom some of the members of the jury expressing a desire to retire to a urinal, the bailiff proceeded with the jury to one which opened on the hallway leading to the courtroom and close thereto. The bailiff, assuming that all of the jury had withdrawn from the urinal, proceeded with them to the courtroom, upon entering which, it was discovered that one of the members thereof was absent. The bailiff immediately returned to the urinal premises, called the absent juror, and accompanied him to the courtroom. The affidavit of the bailiff shows that while the jurors were in the urinal he stood at the door thereof, that no person came in or left the same, and that no person had access to said jury, or conversed with any of the members thereof; that no more than two minutes elapsed between the entry of the eleven jurymen into the courtroom and the coming in of the twelfth. It does not appear from any of the affidavits who this juror was, and no

affidavit is presented from him; but there is no pretense that, in fact, any communication was had by the juror with any third person. Application for a new trial on this ground was based solely on the fact of the temporary separation. But in civil cases proof of mere separation is not sufficient to set aside a verdict; it must appear in addition thereto that some prejudice to the moving party has occurred; that some substantial right of his has been affected by the separation. Counsel for contestants call our attention to several decisions in criminal actions upon this point, but they have no application, as a different rule applies in civil than obtains in criminal cases.

The civil rule is announced in *Saltzman* v. *Sunset Tel. etc. Co.*, 125 Cal. 508, where it is said on the subject: "In criminal cases, our statutes have always provided, as now by section 1181 of the Penal Code, that a court may grant a new trial 'when the jury has separated without leave of the court after retiring to deliberate upon their verdict.' There is no such ground for granting a new trial in a civil case, except under the ground of misconduct of the jury 'materially affecting the substantial rights of a party.' . . . The matter is fully discussed in a note to *McKenny* v. *People*, 43 Am. Dec. 65. The annotator says it is almost the universal rule that in order to set aside the verdict 'there must be some evidence of other misconduct, in addition to the mere fact of separation, which has operated to the party's prejudice.' "

The affidavit of the bailiff negatives the presumption of any improper conduct upon the part of the jury, and none of the affidavits in the case state facts raising even a suspicion of any misconduct, and there is nothing to show that any substantial right of the contestants was affected. The bailiff had a right to take the jurors to the urinal at their request, and the extent of the matter appears to be that one of them merely delayed longer than the rest in leaving it and accompanying his associates, and this being the only circumstance shown, it is rather doubtful, except technically, whether there was a separation at all.

6. The last points urged by contestants arise under the following circumstances: This case was here before,—*Estate of McKenna*, 138 Cal. 439,—where it was held that the appeal then taken from the order denying the motion for a new trial

was premature, because the court had failed to make any finding, order, or judgment upon all the issues made by the contest, and the cause was, therefore, remanded for further proceedings. The issue undisposed of, referred to in said opinion, was as to the execution of the will. The will was holographic, and in their petition for the revocation of its probate, the contestants alleged, not only the unsoundness of mind of the testatrix, and undue influence in procuring its execution (matters we have already considered), but further alleged that the will was not written, dated, or signed by testatrix, and demanded a jury trial on all these issues. All these allegations were denied by the answer, and, upon the trial, contestants failed to introduce any evidence upon the issue of non-execution, addressing themselves solely to the issues of mental incapacity and undue influence.

After the cause was remanded, as above stated, on the *ex parte* application of proponent, the judge of the lower court signed a judgment in the case. Thereafter, on contestants' motion, and upon the ground that it was rendered through the surprise, excusable neglect, mistake, and inadvertence of contestants, this judgment was set aside.

The lower court then fixed a time when further proceedings in the matter of said contest would be taken up, at which time the contestants demanded that the cause be again set for trial before a jury, upon all the issues. This was denied. Counsel then asked for a continuance, that they might produce other evidence, which was denied, as was also a request that they be then permitted to introduce evidence in support of the issues raised by the pleadings.

The court thereupon signed a judgment in the cause, approving the verdict of the jury upon the issues submitted to them, and, upon the issue of non-execution, found that the will had theretofore been admitted to probate, that upon its contest no evidence had been offered by contestants on this issue therein made, that the will had been duly executed by testatrix, and denied revocation of its probate.

There is some question made as to whether the judgment was signed before, or after, the denial of contestants' application for the continuance, or their request to be permitted to introduce testimony on the issues. But the view we take of the matter renders this unimportant.

Contestants complain of these orders denying all their applications. It is unnecessary to waste time in discussing their application for a resubmission of all the issues to the jury. Counsel claims he was entitled to it, because, he insists, the vacation of the former judgment made on his motion, had the effect also of vacating and setting aside the verdict. It is hardly necessary to say that counsel has not pointed us to any authority supporting this contention, and we are satisfied none exists.

Neither was the court required to continue the matter to afford him an opportunity to present testimony on the issue of non-execution, nor was he, in the then condition of the case, entitled to offer any. In the opinion upon the former appeal above referred to, this court did not hold that it was necessary for the lower court to take any evidence with reference to this issue; it was simply held that it was the duty of the court to *find* on the issue, and under the law the court was fully authorized to make a finding on this subject without hearing further from the contestants. In fact, they had no legal right to make any further showing. It is to be remembered that this was a contest of a will after probate. In admitting it to probate, the court had necessarily found the existence of all essential facts upon which the order admitting it had to be based—including due execution by the testatrix. The inauguration of the contest did not set the order admitting the will to probate at large. That could only be effected by a successful contest. If the contest had been on the sole ground of unsoundness of mind of the testatrix, and was unsuccessful, it certainly would not be necessary, in order to authorize the court to enter a judgment denying the petition for revocation, to take testimony upon matters which were not involved in the contest—to show due execution of the will, or the absence of undue influence, etc., because these matters stood already adjudicated, and were unaffected by the contest. And from a legal point of view this is the situation in this case.

The court had originally found that this will was duly executed by the testatrix, as it had all other essential facts. The appellant contested it on three grounds, and on all the issues thus made demanded a jury trial. No issue was left to be subsequently submitted to the court. Upon the trial before

the jury the issue of non-execution was abandoned, and the case then stood as to it, as if no such issue had been raised, and as the court had theretofore found in favor of its due execution in admitting the will to probate, it was not required to take evidence upon the matter again.

Nor, in an attack upon a will after probate, can contestants, by failure to introduce evidence upon some ground of contest, require the court to take evidence upon such issue, and so deprive a proponent of the right to have the verdict of the jury upon it. The proponent is as much entitled to a jury trial on all the issues, if they are to be tried at all, as the contestants, and, as the court has no right to submit an issue to a jury unless there is evidence introduced in support of it (*Estate of Nelson,* 132 Cal. 182), and, as the proponent has no right to submit evidence to a jury in support of a denial by him of an allegation upon which contestants have offered no proof (*Estate of Wooten,* 56 Cal. 322), it would be depriving proponent of this right to have the jury pass on all the issues, if the failure of contestants to support an allegation made by them would only have the effect of withdrawing that particular issue from the jury and requiring the court to hear evidence on it.

Aside from this, in a contest of a will which has theretofore been duly admitted to probate, the same rule governs with regard to issues framed by the pleadings, upon which no evidence is offered, as applies in actions generally, one of which is, that when the burden of proof is upon a party to sustain an allegation, which is made an issue in the case, and he fails to introduce any evidence in its support, the presumption is against him as to the existence of the facts alleged, and unproven, and the finding of the court should be in accordance with the presumption. (*Monterey County* v. *Cushing,* 83 Cal. 507.) Applying this rule in the case at bar, the contestants had the burden of proof to show non-execution, and, as they failed to introduce evidence upon that issue, the presumption from this failure was against them, and it was the duty of the court to find in favor of due execution upon this presumption.

Some minor points are made by contestants, to which in this opinion we devote no attention, because we do not consider they call for it.

There is no error apparent in the record, and the order denying the motion for a new trial and the judgment are affirmed.

McFarland, J., and Henshaw, J., concurred.