[L. A. No. 4833. Department One.—November 5, 1917.]

In the Matter of the Estate of SAMUEL F. BAKER, Deceased. WILL D. GOULD, Appellant; JULIUS V. PATROSSO, Administrator, etc., Respondent.

COSTS—SECURITY BY NONRESIDENT—EXCEPTION TO SURETIES.—Section 1036 of the Code of Civil Procedure does not authorize the service of exception to the sureties in an undertaking for security for costs given by a nonresident plaintiff, the only remedy, if the security given is insufficient, being that the court may order a new or additional undertaking.

ID.—INSUFFICIENCY OF SECURITY—ORDER FOR ADDITIONAL UNDERTAKING—FAILURE TO GIVE.—When an order for additional security by a nonresident is made, and none is given, the authority of the court under Code of Civil Procedure, section 1037, to dismiss the action is permissive and discretionary, and not mandatory.

WILLS—CONTEST AFTER PROBATE—NONCONTESTING CLAUSE IN WILL.—A clause in a will declaring that any legatee or devisee contesting the will shall receive no part of the estate does not prevent any person interested from maintaining a contest, and the entry by the clerk of the default of a contestant for failure to answer the cross-complaint of an executor, which attempts to set up such a clause

as a bar to a proceeding to revoke the probate of the will, does not estop the contestant from proceeding with the cause, it being immaterial whether such a cross-complaint be answered or not.

ID.—NONCONTESTING CLAUSE—INSANITY OR UNDUE INFLUENCE.—If a will is invalid at the time of its execution, by reason of insanity or undue influence, the invalidity is as effective upon a clause declaring that any person seeking to set it aside shall receive no part of the estate as it is upon any other part of the will.

ID.—CONTEST OF WILL—MENTAL INCAPACITY—EVIDENCE—SUCCESSIVE FOREIGN ADJUDICATIONS OF INSANITY AND RESTORATION—PRESUMPTIONS.—Where in a will contest it appeared that the testator had been adjudged insane by a competent court in New York and that some years afterward in a proceeding in the same court for the purpose, it had been adjudged that he had become competent, and a guardian of his estate previously appointed had been discharged, the latter judgment was not conclusive that he was then sane. Prior to that the legal presumption was that the insanity previously adjudicated would continue; thereafter the legal presumption would be that he was sane; but both presumptions were disputable and subject to contradiction by competent evidence.

ID.—EVIDENCE OF INSANITY SUSTAINING JUDGMENT.—Where the testator who died at the age of eighty-seven had been adjudged insane in California in 1858, and confined in an asylum for a year, had been adjudged insane in Massachusetts in 1876 and confined for thirteen years in an asylum, from which he escaped, had been adjudged insane in New York but later adjudged restored to competency, when a guardian of his estate previously appointed had been discharged, his own deposition in the New York proceeding in which he was adjudged restored to competency, and other circumstances in evidence tending to show that his mental incapacity continued at intervals, and that he retained certain insane delusions until his death, was sufficient to support a verdict of insanity found by the jury.

ID.—FINDINGS—INSANITY OR UNDUE INFLUENCE.—When a will is contested on the dual grounds of insanity and undue influence, a finding that the testator was insane renders any finding on the question of undue influence unnecessary.

ID.—INSANITY—EVIDENCE—CERTIFIED COPY OF COMMITMENT.—Under section 1918 of the Code of Civil Procedure, a copy of a commitment to an insane asylum certified by the superintendent is properly received in evidence.

ID.—FOREIGN ADJUDICATION.—Under section 1905 of the Code of Civil Procedure, a copy of the record of proceedings in Massachusetts of an adjudication of insanity and appointment of a guardian, certified by the clerk of the court having the legal custody thereof, under the seal of the court, and accompanied by a certificate of the

presiding magistrate that the attestation was by the proper officer, and in due form, was properly received in evidence.

ID.—INSANITY—EVIDENCE—REMOTENESS OF TIME.—In such case it was not error to admit evidence tending to show insanity beginning more than fifty years before the testator's death and continuing until the year 1901. Whether evidence of this character is too remote from the execution of the will rests very largely in the discretion of the trial court.

ID.—REMOTENESS OF TIME—NO GENERAL RULE.—No general rule can be given as to when evidence of insanity is too remote from the time of the execution of a will to be admissible; where the insanity developed early in life and was fixed and permanent, its persistent character can best be shown by proof of its existence during a long period of time, and evidence thereof is properly admissible in such cases.

ID. — DECLARATIONS IN WRITINGS BY TESTATOR — DOCUMENTS OUT OF JURISDICTION—ORAL PROOF.—Papers signed by the testator, which tend to show his insanity, which are on file in a foreign court, are on the same footing as lost documents, and under section 1855 of the Code of Civil Procedure, may be proved by oral evidence, or by copies produced by a witness, who swears that he examined the papers on file in the foreign court, that they are in the testator's handwriting, and that the copies produced are correct copies.

ID.—OPINION EVIDENCE.—It is well settled that a witness who describes the conduct of another whose sanity is in question may testify as to whether or not the appearance and manner of the person, at the time, was rational or irrational, not only with respect to his actions, but also with respect to his sayings.

APPEAL from a judgment of the Superior Court of Los Angeles County revoking probate of a will. Curtis D. Wilbur, Judge.

The facts are stated in the opinion of the court.

James H. Blanchard, Wm. T. Kendrick, and Will D. Gould, for Appellant.

Wm. M. Abbott, Wm. M. Cannon, Thos. C. Ridgway, and Kingsley Cannon, for Respondent.

SHAW, J.—This is an appeal by Will D. Gould, as executor of the last will of Samuel F. Baker, deceased, and also as residuary legatee, under said will, from a judgment of the lower court revoking a previous order of that court admitting said will to probate.

Samuel F. Baker died on May 8, 1912. His will was admitted to probate by an order of the superior court made on May 24, 1912. The decedent left as his surviving heirs at law his brother Horace Baker, his sister Julia F. Baker, and his sister Mary J. Farrand. On May 23, 1913, said Mary J. Farrand filed her petition to revoke the probate of said will, alleging as grounds of contest that the testator at the time of making the same was of unsound mind, and that he was acting under the undue influence of the said W. D. Gould. After filing the said petition and while it was pending, in February, 1914, Mary J. Farrand died. Thereupon Gould, as executor of the will, moved to dismiss the proceeding on the ground that the right to contest the will did not survive the death of the heir. The motion was granted and judgment of dismissal given accordingly. From this judgment an appeal was taken to this court, in which the court determined that the proceeding to contest the will did not abate by the death of the contestant, but that the right to contest survived, and that the prosecution thereof could be continued by the personal representative of the contestant, and the judgment dismissing the cause was reversed. (*Estate of Baker*, 170 Cal. 578, [150 Pac. 989].) Thereafter, in the court below, Julius V. Patrosso, as administrator with the will annexed of the estate of Mary J. Farrand, was substituted as contestant, and the cause proceeded to trial, resulting in the judgment setting aside the probate of the will, from which the present appeal is taken.

I. Mary J. Farrand was not a resident of the state. Upon the filing of her petition for revocation Gould, as executor, demanded that she file the undertaking for costs required of nonresident plaintiffs by section 1036 of the Code of Civil Procedure. Thereupon the undertaking required by that section was given, it being signed by two persons as sureties, each of whom made the affidavit required by section 1057 of the Code of Civil Procedure, respecting his property. Gould thereupon filed a paper stating that he excepted to the sufficiency of the sureties upon said undertaking, and that he required that said sureties justify as sureties in the manner provided by law. The sureties did not justify, except by the affidavit aforesaid, attached to the undertaking. Within ten days thereafter Gould moved the court to dismiss the proceeding on the ground that the contestant had not caused the

sureties on said undertaking for costs to justify as such sureties. The court denied the motion. On the trial the appellant renewed the objection and moved to arrest the proceedings on the ground that there had been no justification of the sureties upon the undertaking for costs. The objection was overruled and the court proceeded with the trial. The appellant assigns these rulings as error. They are without merit. Section 1036 does not authorize a proceeding of the character here attempted against the sureties on an undertaking for costs filed by a nonresident plaintiff. It provides that if the security provided by the undertaking is insufficient, the court may order a new or or additional undertaking. It does not authorize the sufficiency of the sureties to be questioned by way of exception and justification. That method is provided with respect to some classes of undertakings, such as appeal bonds, injunction bonds, undertakings upon which a corporation is the sole surety (Code Civ. Proc., secs. 529, 948, 1057a), and some other classes of undertakings. But with respect to an undertaking for costs given by a nonresident plaintiff, no such method of procedure is provided, and the only remedy, if the security is insufficient, is that provided by section 1036. The appellant did not resort to that method. Consequently his motion was properly denied and his objection was properly overruled. We are not to be understood as intimating that in any event the failure to give additional security when properly ordered by the court below would operate to deprive that court of jurisdiction of the cause. Section 1037 provides that when an order is made for additional security, as provided in section 1036, and none has been given, the court after thirty days *may* dismiss the action or proceeding. It does not follow that the court is bound to dismiss it, or that if it refuses to do so its further proceedings therein are without jurisdiction and void.

II. The appellant filed a so-called cross-complaint in the court below, alleging therein that the contestant was estopped from maintaining this contest by reason of a clause in the will declaring that if any legatee or devisee contest the will, such legatee or devisee should receive no part of the estate. This cross-complaint was duly served upon the contestant, and she did not answer the same within the ten days allowed by law therefor. Thereupon her default for not answering was entered by the clerk at the request of Gould. He now

contends that by reason of this default the contestant has forfeited her right to proceed with the application to revoke the will. One ground of contest is that the testator was of unsound mind at the time of the execution of the will. It would be a strange doctrine which held that one who was of unsound mind could not execute a will, and that at the same time he could by a clause in a will otherwise invalid, prevent any persons interested in the estate from maintaining a contest thereof. The invalidity which attaches to a will on the ground of insanity in the testator at the time of its execution attaches to all of its provisions, and is as effective upon a declaration therein forbidding a contest as upon any other part of it. It would be equally strange if a will procured by undue influence of another could be safeguarded by a provision inserted therein that any person who sought to set it aside on the ground of such undue influence should receive no part of the estate, and should therefore be disqualified from maintaining a contest upon that ground. It follows that the so-called cross-complaint, assuming for the present that a cross-complaint in any event is a proper pleading in a case for the revocation of the probate of a will, did not state any facts which the contestant was called upon to answer, and it is immaterial whether she did formally answer or not. Her failure to do so did not estop her from proceeding with the cause.

III. The appellant claims that the evidence does not sustain the verdict with respect to insanity and undue influence. At the time of his death the testator was eighty-seven years of age. He left an estate of the value of more than twenty-five thousand dollars. The theory of the contestant was that he became insane early in life; that his insanity was of a fixed and permanent character, continuing throughout his life; that he had an insane delusion that his brother and sisters were endeavoring to obtain his property, and that this delusion led to and controlled the making of the will. In support of this theory evidence was introduced showing that he was adjudged insane in 1858 in San Francisco, California, and was thereupon committed to the hospital for the insane at Stockton, where he remained for something less than a year, and was discharged; that he was again adjudged insane in the state of Massachusetts in 1876, and a guardian of his person and estate was appointed; that thereupon he was com-

mitted to an asylum for the insane in that state, where he remained for a period of about thirteen years, and was then transferred to the state farm, from which place he escaped in the year 1892; that in 1877 he was adjudged insane by the supreme court of the state of New York, where some of his property was situated, and a guardian was appointed for his estate; that this guardianship continued until the year 1902, at which time, in a proceeding for that purpose in the supreme court of New York in Westchester County, it was adjudged that he had become competent to manage himself and his affairs, and that the guardian theretofore appointed for his person and estate be discharged. Other evidence was given tending to show that his insanity was of long standing and was of a fixed and permanent character, and that his delusion concerning the purpose of his brother and sisters to obtain his property and their attempts in that behalf continued until the time of his death.

The adjudication in 1902 by the supreme court of New York, declaring that he was competent to manage himself and his affairs, was not a conclusive adjudication that he was then sane. Prior to that judgment the legal presumption would be that the insanity previously adjudged to exist would continue. Thereafter the legal presumption would be that he was sane. Each of these presumptions was disputable. After the adjudication in 1902, that he was competent, the disputable presumption that he was sane arising therefrom was subject to contradiction by competent evidence. The appellant contends that there was no sufficient evidence to rebut this presumption of his subsequent sanity. While the evidence that he was insane from that time until his death is not as strong as that showing his previous insanity, we think there was sufficient to sustain the verdict. The history of the case prior to that time, as disclosed by the evidence, strongly indicated that his insanity was likely to continue during his life, and that while it might become less acute as he grew older, he would never entirely recover. In the proceeding to have him restored to sanity in New York, his deposition was taken at great length. His testimony on that occasion is sufficient of itself to support the conclusion that he was then of unsound mind. Other circumstances appearing in the evidence and occurring at intervals from that time until his death tended to show that this condition continued thereafter, and

that he still retained an insane delusion that his relatives had attempted to take from him his property and had had him imprisoned for that purpose. Without further discussion it is sufficient to say that the evidence on this subject supports the verdict of the jury.

Inasmuch as the verdict declaring him to be of unsound mind at the time the will was executed is sufficient to sustain the judgment, it is unnecessary to enter into any discussion of the sufficiency of the evidence to sustain the finding of the jury that the will was procured by undue influence, or of the alleged errors of law relating to that subject.

IV.  A large number of alleged errors in rulings made during the trial are presented in the brief of the appellant. It will be necessary to notice only a few of them.

A copy of the commitment under which the testator was confined in the insane asylum at Stockton in 1858, certified by the superintendent of the asylum, was admitted in evidence.  Subdivision 6 of section 1918 of the Code of Civil Procedure provides that an official document of this character may be proven by a copy certified by the legal keeper thereof. The superintendent of the insane asylum is the legal keeper of the commitments under which persons are confined in such asylum.  The authentication was therefore legal and the copy was properly allowed in evidence.

The record of the proceedings in Massachusetts, whereby the testator was adjudged insane and a guardian appointed for him, was proven by a copy certified by the clerk having the legal custody thereof, with the seal of the court annexed, and by a certificate of the presiding magistrate that the attestation was by the proper officer and in due form. This was in exact accordance with section 1905 of the Code of Civil Procedure.  The admission of the copy in evidence was not error.

Objections were made to these documents and other evidence tending to show his insanity at a period beginning more than fifty years before his death and continuing until the year 1901, on the ground that it was too remote.  The question whether evidence of this character is too remote from the time of the execution of the will is a matter resting very largely in the discretion of the trial court.  No general rule can be given on the subject.  Each case must depend upon its particular circumstances.  Where the evidence tends

to show that the insanity developed early in life, and was of a fixed and permanent character, the period during which the insanity may be shown is, of necessity, greatly extended. Its persistent character can best be shown by proof of its existence during a long period of time, and evidence thereof is properly admissible in such cases. "There seems to be no agreed definition of the limit of time within which such prior or subsequent condition is to be considered; and in the nature of things no definition is possible." (1 Wigmore on Evidence, sec. 233, p. 292.) The following decisions support the rulings of the court below as to this evidence under the conditions of this case: *State* v. *Jones,* 50 N. H. 382, [9 Am. Rep. 242]; *United States* v. *Holmes,* 1 Cliff, 108, [Fed. Cas. No. 15,382]; *Herster* v. *Herster,* 122 Pa. 239, [9 Am. St. Rep. 95, 16 Atl. 342]; *People* v. *Griffin,* 117 Cal. 583, 587, [59 Am. St. Rep. 216, 49 Pac. 711].) Of course, all the evidence on the subject was material only because of its bearing on the question of the sanity of the testator at the time of the execution of the will. Its weight was for the jury to determine. The jury was correctly instructed by the trial court as to its duty in considering and applying this evidence.

The testator, shortly after he was charged with insanity in Massachusetts, wrote two statements of the occurrences which led to the adjudication. These documents were on file in the supreme court of New York as a part of the papers in the proceeding in which he was there adjudged insane. The deposition of Horace Baker was given to the effect that the witness had examined the papers on file in New York, that the same were in the testator's handwriting, and that he had made a correct copy thereof, which he produced, and the same was admitted in evidence in the court below over the objection of the appellant. The statements made in the writings tended strongly to show the insanity of the testator at that time. The documents consisted of declarations of the testator himself. While they might have been proven by copies of the documents certified by the keeper of the records in New York, this method of proof does not exclude all other methods. The papers being out of the jurisdiction, could not be produced at the trial by means of the ordinary processes of the court. They stand upon the same footing as lost documents, and therefore their contents may be proven by oral evidence, or by copies shown by the testimony of witnesses

to be true copies.    (Code Civ. Proc., sec. 1855; *Zellerbach* v. *Allenberg,* 99 Cal. 73, [33 Pac. 786].)

The witness Horace Baker, brother of the testator, was allowed to testify to conversations had with the testator in his lifetime, and in relation thereto to state whether or not the manner and conversation of the testator impressed him as rational or irrational.    Objections were made to these questions, and others of like character, and much of the brief is taken up with the presentation of the alleged errors in ruling upon them.    It is well settled that it is competent to ask a witness who describes the conduct of another person whose sanity is in question whether or not the appearance and manner of the person at the time was rational or irrational, not only with respect to his actions but also with respect to his sayings.    (*People* v. *Manoogian,* 141 Cal. 595, [75 Pac. 177] ; *People* v. *Lavelle,* 71 Cal. 352, [12 Pac. 226] ; *Holland* v. *Zollner,* 102 Cal. 636, [36 Pac. 930, 37 Pac. 231] ; *People* v. *McCarthy,* 115 Cal. 260, [46 Pac. 1073].)

V.    A great number of rulings made in the course of the trial are mentioned in the briefs and are claimed to have been erroneous.    Many of them are not even argued.    All of them which we have not already discussed are trivial in character, and we will not extend this opinion by further discussion of them.    If any of them are erroneous, which we do not admit, the error was not of sufficient importance to have affected the result of the trial.    This applies also to the giving and refusal of instructions.

The judgment is affirmed.

Sloss, J., and Lawlor, J., concurred.

Hearing in Bank denied.