[Civ. No. 4265.   Third Appellate District.—January 5, 1931.]

In the Matter of the Estate of BARNEY ALEXANDER, Deceased. PAULINE ALEXANDER, Respondent, v. N. C. KINSEY, Appellant.

2

A. Q. Lomba and E. L. Webber for Appellant.

Leon Samuels, Thomas C. Anglim and Philip Selig, Jr., for Respondent.

MR. JUSTICE THOMPSON (R. L.) DELIVERED THE OPINION OF THE COURT.—This is an appeal from a judgment denying the petition to probate a will on the ground of lack of testamentary capacity.

Barney Alexander died February 25, 1929, in Napa County, aged ninety-nine years. He left surviving him a widow sixty years of age and several unnamed heirs who resided in Europe. He was possessed of an estate of small value, consisting entirely of community property. At the time of the marriage of Mr. and Mrs. Alexander, he was without means. She then owned a few hundred dollars. They acquired a small mercantile business which prospered solely through her economy and personal management. In the course of their thirty years of married life they thus accumulated a few thousand dollars. The spouses lived in comparative harmony except for the period of a few months in 1928, during which time they were separated by domestic trouble. At this time Barney Alexander commenced a suit for divorce against his wife on the ground of cruelty. They were soon reconciled and the action was dismissed. They afterward lived together until the occasion of his death. Several witnesses testified Mrs. Alexander always treated her husband with kindness and consideration. There were no children as issue of the marriage.

July 22, 1927, Barney Alexander executed a will, by the terms of which he gave the bulk of his estate to the proponent, N. C. Kinsey of Oakland, who was a mere acquaintance designated as "a friend". The testator and his chief legatee were not intimate friends. For a brief period, some fourteen years prior to his death, the testator was employed by the proponent to repair garments sold by him in a second-hand business. No other relationship existed between them. They never visited at the homes of each other. The only other bequests provided for in the will were a gift of $1 to his wife, and the sum of $100 to each of "my relatives who may survive me, namely brothers and sisters now in Europe". Mr. Kinsey was appointed executor and was authorized to serve as such without bonds.

The will was filed for probate. The widow contested it on the grounds of lack of due execution, undue influence and unsound mind. The cause was tried with a jury. At the close of the evidence, on motion of the proponent, the issue of undue influence and lack of due execution were withdrawn from the jury. The verdict was rendered finding the testator to be of unsound mind at the time of the execution of the will. A judgment was accordingly entered refusing to admit the will to probate. From this judgment the proponent has appealed.

A reversal of the judgment is sought on the ground that (1) the evidence is insufficient to support the findings and judgment to the effect that the testator was of unsound mind, (2) the court erred in admitting opinion testimony respecting the sanity of the testator by those who were not shown to be intimate acquaintances, and (3) the court erred in giving certain instructions to the jury.

The findings and judgment are abundantly supported by the record. It is quite evident the deceased lacked testamentary capacity. He was ninety-seven years of age when he executed the will. He incorrectly signed his name to the will as "B. Axander". There is no evidence that he understood and appreciated the nature, value or location of his property, or that he even knew the names or places of residence of his brothers and sisters in Europe upon whom he sought to bestow legacies. The evidence with respect to his knowledge of the provisions of his will is very unsatisfactory. The attorney who drew the will, and the attesting witnesses testify merely that he answered the inquiries regarding the instrument and his desire to have it signed by the witnesses with his assent, implied from his use of the single word "yes". The will was not read in the presence of the witnesses. The testator made no affirmative statement in regard to the will or its execution from which we may ascertain his mental capacity or determine whether he knew the nature of his act or appreciated the manner of disposing of his property. The provisions of the will were unnatural. He practically disinherited his wife and relatives and gave the bulk of his property to a mere acquaintance to whom he was under no obligation, and who in reply to an alleged statement of the testator that "I will never forget you,— what you did for me," said, "I don't know what I did

for you.'' The testator was extremely old, illiterate, enfeebled and eccentric. He went about bareheaded, disheveled and filthy, with his shoes unlaced and his trousers unbuttoned. One occasion he was seen walking down the street in this condition carrying a chamber in either hand. In warm weather he sometimes wore several coats at the same time, or an overcoat. He chased his neighbors' poultry. He dug out their shrubbery and transplanted the bushes in his own yard. He broke the pickets from their fences and gates. He recklessly started grass fires in dangerous proximity to buildings. When reproved for such conduct he cunningly claimed he thought it was his own property, mumbled and muttered in a maudlin fashion, or laughed in a defiant and imbecilic way. He was frequently unintelligible in his conversation and impossible to understand. He picked up and smoked cigar stubs taken from the gutter. He gathered and ate refuse from garbage cans. He collected and carried home in sacks entrails from poultry for the purpose of trying out the fat with which to cook his food. He stormed about the store with a stick, threatening the customers and sometimes throwing the merchandise into the street. He refused to eat food prepared or cooked by anyone but himself, claiming that he feared his wife and others would poison him. A dozen witnesses testified to facts and circumstances which strongly indicate he was afflicted with senile dementia and that he lacked testamentary capacity at the time of the execution of his will.

█ It is true that neither old age nor physical and mental weakness will necessarily invalidate a will. Extreme age, however, together with mental and physical weakness, are circumstances which should be considered together with all other facts surrounding the execution of a will to determine whether the testator possessed testamentary capacity. (1 Alexander on Wills, 481, sec. 355; 28 R. C. L. 94, sec. 44.)

█ Extreme age of the testator, the unnatural terms of the will, the incorrect spelling of his name, the disinheriting of his wife, the failure to indicate the nature, value or location of his property, his failure to name or give the places of residence of any of his brothers or sisters, a uniform course of eccentric and peculiar acts, incoherent language and peculiar conduct furnish ample evidence to

support the findings and judgment in this case to the effect that the testator was of unsound mind and lacked testamentary capacity to execute a valid will.

In the course of the trial several witnesses, after relating circumstances similar to some of the foregoing facts upon which they based their opinions, were permitted, over the objections of the proponent to assert that they considered the testator irrational. It is contended this constituted error for the reasons that the witnesses were not qualified to testify as intimate acquaintances pursuant to section 1870, subdivision 10, of the Code of Civil Procedure, and that the facts upon which their opinions are founded were too remote.

These assignments of error are without merit. ■ The opinions of nonexpert witnesses, regarding the sanity of a testator, who may be classified as intimate acquaintances, are competent when accompanied with pertinent facts or circumstances which are related by the witnesses. (Sec. 1870, subd. 10, Code Civ. Proc.; *Estate of Baker*, 176 Cal. 430, 439 [168 Pac. 881]; 26 Cal. Jur. 747, sec. 89; 40 Cyc. 1038; 1 Alexander on Wills, 519, sec. 385; Page on Wills, 464, sec. 390.)

The question as to whether the facts create a relationship between the witness and the testator which would be considered an intimate acquaintance is largely within the discretion of the trial court. The solution of this problem will not be disturbed on appeal except for an abuse of discretion. (*Estate of McKenna*, 143 Cal. 580, 584 [77 Pac. 461]; *In re Wax*, 106 Cal. 343, 351 [39 Pac. 624]; Page on Wills, 464, sec. 390.)

■ The proof of the sanity of the testator and of the facts upon which his state of mind depends are not necessarily confined to the exact time of the execution of the will. Evidence of the testator's mental status together with his appearance, conduct, acts, habits and conversation, both before and after the execution of the will are admissible so long as they have a reasonable tendency to indicate his mental condition at the time of the execution of the will. (*Estate of Baker*, 176 Cal. 430, 438 [168 Pac. 881]; 1 Alexander on Wills, 487, sec. 358; 26 Cal. Jur. 747, sec. 89.) In the text of California Jurisprudence last cited it is said "An opinion as to the decedent's condition at

a time antedating execution is not to be excluded on the ground of remoteness.'' ▮ When the sanity of a testator is under investigation a broad scope of examination should be allowed for the reason that the evidence of mental derangement is frequently subtle and exceedingly difficult to prove. This is particularly true when the characteristics of the malady indicate a permanent and progressing mental disease. This is the nature of senile dementia. The weight and sufficiency of such evidence is left entirely with the jury.

▮ In the present case the four witnesses whose opinions as to the testator's sanity are assigned as error were sufficiently qualified as intimate acquaintances, and the facts which they related were not too remote to entitle them to be admitted in evidence. Mr. Hudson testified that he knew the testator and his wife at Calistoga ''a year and a half''; that he ''lived neighbors to them'', and that he saw them ''practically every day''. The will was made in July, 1927. The testator died in February, 1929, just a year and seven months after the execution of his will. The acquaintance of this witness Hudson therefore extended back to within a month or two of the time of the making of the will.

Mrs. Taylor lived next door to the Alexanders in Calistoga. She testified, ''I have known them since he moved to Calistoga a year ago in the spring.'' She says she saw him ''every two or three days'', during that period.

Sarah Brawner was an attendant for five years at the Napa State Hospital. She testified that she was acquainted with the Alexanders ''from 1919 . . . until October before he passed away''. For a year and a half prior to July, 1925, she lived within a block of them, and claims that she saw him ''practically every day'' during that period of time. It is true that for nearly two years immediately before the execution of the will, she did not see him. After the making of the will, she saw him frequently to the time of his death.

Emma Pauer moved into one of the houses owned by the Alexanders at Oakland. This was in November, 1927, three or four months after the execution of the will. She testified, ''I lived there over a year. . . . I used to see him . . . almost every day.''

In holding that these witnesses were qualified to testify as intimate acquaintances regarding the sanity of the testator and that their evidence was not too remote, the court did not abuse its discretion.

■ It was not error to permit the contestant to refute the charges of cruelty contained in his complaint for divorce which was filed in August, 1928. The complaint was received in evidence by stipulation. It contained many declarations of harsh and cruel treatment on the part of the contestant. The pleading was verified by Mr. Alexander. It was filed less than a year after the execution of the will. Unfounded declarations of cruelty made by a testator about the time of the execution of his will, may tend to prove his mental condition. Among the symptoms which indicate a deranged mind are the presence of delusions of oppression and persecution on the part of friends and relatives. The complaint, with its declarations of cruelty, was admissible to show the state of mind of the testator. As proof of the fallacy of these charges, it was also proper to permit the contestant to refute them *seriatim*. Either oral or written declarations of a testator, which may reasonably tend to prove his mental status at the time of the execution of his will, are competent evidence for that purpose. (*Estate of Thomas*, 155 Cal. 488, 494 [101 Pac. 798]; *Estate of Snowball*, 157 Cal. 301, 308 [107 Pac. 598]; 28 R. C. L. 92, sec. 42.)

■ The appellant assigns, as error, the giving of half a dozen instructions involving the issue regarding the sanity of the testator. While we are unable to approve the language of some of these challenged instructions, we are of the opinion that they are not prejudicial since the jury was elsewhere fully and fairly charged regarding the same elements contained therein.

The first of these instructions, in effect, informed the jury that if they found that Barney Alexander was of unsound mind upon the subject affecting the nature and extent of his property, or as to the consequences of disinheriting his wife and bequeathing his property to a non-relative, they must then assume he lacked testamentary capacity entitling him to make a valid will, even though he might be of sound mind upon other subjects. It is contended this instruction is "confusing" for the reason that

it specifies only two elements affecting the sanity of the testator. The language of this instruction is not as clear as it might have been. In this connection the jury was further instructed that every presumption is in favor of the validity of the will; that the testator is presumed to be of sound mind; that the burden is on the contestant to show that the testator was of unsound mind at the very time of the execution of the will; that the law solemnly assures everyone the absolute right to dispose of his property by will; that this is a valuable incident to the ownership of property, and that a person of sound mind has a perfect right to make an unjust, unreasonable or even a cruel will; that neither the extreme age of the testator nor the fact that he cut off his wife with a bequest of only one dollar would alone invalidate the will; that one must possess testamentary capacity and be of sound mind in order to make a valid will; that the possession of testamentary capacity means the maker of a will must comprehend the nature and purpose of the act in which he is about to engage; that he must appreciate the character and extent of the property he proposes to devise; that he must be able to name and identify the individuals and understand the relationship which he bears to those who would naturally become the objects of his bounty.

In view of the numerous clear instructions which were given to the jury with relation to the issue of insanity, we are convinced the jury were not misled or confused by the challenged instructions. It may reasonably be construed to mean that if the jury found the testator to be of unsound mind to the extent that he did not know the nature or extent of his property, or that he was of unsound mind to the extent that he did not comprehend the effect of disinheriting his wife by giving the bulk of his property to a stranger who would not naturally be entitled to his bounty, then the will would be invalid, even if the testator were sound and rational with respect to other transactions. This is a correct statement of the law.

Evidently the appellant does not place great reliance upon his second challenged instruction. It is not quoted in his brief nor criticised beyond saying, ''This instruction is confusing and . . . is too broad in its application to the facts in this case.'' It is inartistically drawn, but instructs

the jury in effect that, "If you believe . . . Barney Alexander was laboring under an insane delusion affecting his wife," his will executed as a result of such false belief would be invalid. This instruction should be construed with relation to the one immediately preceding it, which reads in part, "It is essential that the testator understand fully the nature of the act (of making his will) and its effect, and be able to comprehend and appreciate the claims (upon his bounty) which he should regard. . . . No insane delusion shall influence his will in disposing of his property." These instructions may reasonably be construed to mean that a will which is the product of insane delusions regarding the wife of the testator who would naturally be entitled to his bounty, would therefore be invalid. This instruction is warranted on the theory that the record contains evidence that Mr. Alexander made many unfounded charges of cruelty and oppression against his wife in the divorce complaint and otherwise, and for the reason that he feared she would poison him.

The third instruction which is challenged merely informs the jury that it is unnecessary to prove by direct evidence that the testator was of unsound mind at the very time of the execution of the will, provided that fact is established by evidence of unsound mind existing either before or after the actual execution of the will from which it may be reasonably inferred he was incompetent when he executed the instrument. This is a reasonable construction of the charge. It correctly states the law. It would be unreasonable to require proof of incompetency at the exact time of the execution of a will. Such proof might be impossible to secure. If this were required, and an escaped inmate of an insane asylum were to draw his own holographic will with no one else about, it would be impossible to prove its invalidity. The proof of an unsound mind emanating from a permanent and progressive mental disease such as senile dementia will be presumed to continue in the absence of evidence to the contrary. Proof of the existence of such permanent mental disorder shortly before or after the execution of a will, may warrant the inference that the disease existed at the very time of making the will and that the instrument is therefore invalid.

■ The fourth instruction advises the jury that if they find "Barney Alexander was in such condition either *physically or mentally* that he did not know, realize or understand the purport, meaning, significance or effect of said instrument," the will would then become void. The word "physically" as it appears in the instruction seems meaningless, and therefore harmless. Physical weakness contributes to mental weakness. The contestant evidently intended to say that if the testator was ignorant of the nature, meaning or effect of his will, it would be void regardless of whether that lack of understanding came from insanity or mental debility resulting from deterioration caused by age and physical infirmity. This instruction should not have misled the jury, for they were clearly instructed that the only issue for them to consider was that of the mental soundness of the testator. The court charged the jury, "You are instructed that it is soundness or unsoundness of mind and not any particular state of bodily health that must control your judgment." We are of the opinion this instruction was therefore not misleading or prejudicial.

■ The next instruction merely declares the self-evident rule that inferences naturally drawn from facts which are actually established by proof, are entitled to be considered as a part of the evidence. (Sec. 1958, Code Civ. Proc.) This may not be controverted.

■ Finally the jury were instructed, in effect, that if they found the provisions of the will to be unnatural in the disposition of the property, that fact might be considered in determining whether it was the product of an unsound mind.

This instruction is criticised by the appellant in the following language: "This court has . . . held that a person may make an unnatural and cruel will. . . . This instruction is (therefore) erroneous. . . . " It is true that a testator who possesses a sound mind may legally make a cruel or unjust will. The appellant overlooks the fact that the sole issue in this case is the testator's sanity. The rule is firmly established that when the soundness of the testator's mind is an issue in the contest of a will, the reasonableness or unreasonableness of the provisions of the will may be considered with all the other facts and circumstances

of the case in determining the question of testamentary capacity. (*Estate of Wasserman,* 170 Cal. 101 [148 Pac. 931]; *Estate of Martin,* 170 Cal. 657, 663 [151 Pac. 138]; *Estate of Johnson,* 72 Cal. App. 663 [237 Pac. 816]; 26 Cal. Jur. 690, sec. 49; 28 R. C. L. 91, sec. 40; 1 Alexander on Wills, 481, sec. 355.)

The judgment is affirmed